RECORD NO. 14-1476

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

S. DOUGLAS TAYLOR, M.D.,

*Plaintiff - Appellant,*

v.

UNITED STATES OF AMERICA;
HEALTH NET FEDERAL SERVICES LLC,

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

## OPENING BRIEF OF PLAINTIFF-APPELLANT

Jeffrey S. Miller
JEFFREY S. MILLER, ATTORNEY
716 Court Street
Jacksonville, NC  28541
(910) 455-8000
jsmlaw@bizec.rr.com

*Counsel for Plaintiff-Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. _____    Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    YES    NO

2.    Does party/amicus have any parent corporations?    YES    NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    YES    NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                            YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____                   _____
        (signature)                                         (date)

## **TABLE OF CONTENTS**

Pages

TABLE OF
AUTHORITIES.................................................. ii

STATEMENT OF SUBJECT MATTER JURISDICTION
AND BASIS FOR APPELLATE JURISDICTION ...........................1

STATEMENT OF ISSUES...........................................2

STATEMENT OF THE CASE.........................................3

STATEMENT OF FACTS............................................8

SUMMARY OF ARGUMENT.......................................... 11

ARGUMENT.....................................................12

      I.  THE DISTRICT COURT ERRED IN DISMISSING THE COMPLAINT
      FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF COULD BE
      GRANTED..........................................12

      II.  THE DISTRICT COURT MISCONSTRUED THE NORTH CAROLINA
      UNFAIR AND DECEPTIVE TRADE PRACTICES ACT............13

      III. HEALTHNET'S CONDUCT AFTER ITS FAULTY DETERMINATION
      OF DR. TAYLOR'S STATUS WAS EGREGIOUS..................18

      IV.  THE AGENCY'S INTERPRETATION OF ITS OWN REGULATIONS
      IS ENTITLED TO NO DEFERENCE BECAUSE THE REGULATIONS ARE
      NOT AMBIGUOUS AND THE PLAIN LANGUAGE OF THE REGULATIONS
      CONTROLS..........................................21

      V.  DEFENDANT HEALTHNET BREACHED THE IMPLIED COVENANT
      OF GOOD FAITH AND FAIR DEALING.......................23

      VI.  EVEN IF HEALTHNET HAD BEEN CORRECT IN ITS
      INTERPRETATION OF 32 C.F.R. § 199.9, UNDER 32 C.F.R. §
      199.9 TERMINATION OF PLAINTIFF'S PROVIDER STATUS WAS NOT
      EFFECTIVE UNTIL FIFTEEN DAYS AFTER THE WRITTEN INITIAL
      DETERMINATION.......................................24

      VII. DR. TAYLOR'S RIGHT TO RECEIVE TRICARE REFERRALS
      AND THEREBY PRACTICE HIS PROFESSION IS PROTECTED BY THE
      FIFTH AMENDMENT TO THE CONSTITUTION..................26

      VIII. THE DISTRICT COURT ERRED IN EXEMPTING THE UNITED
      STATES FROM DISCOVERY...............................28

CONCLUSION...................................................29

REQUEST FOR ORAL ARGUMENT....................................30

## TABLE OF AUTHORITIES

### CASES

*American Airlines v. U.S.,* 551 F.3d 1294, 1301 (Fed. Cir. 2008).22

*Atlantic Purchasers, Inc., v. Aircraft Sales, Inc.,* 705 F.2d 712, 719 n. 2 (4th Cir. 1983).....................................23,24

*Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905 (1997).............23

*Bell Atlantic v. Twombly,* 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007).............................................12

*Bicycle Transit Authority v. Bell,* 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985)................................................23

*Broussard v. Meineke Disc. Muffler Shops, Inc.,* 155 F.3d 331, 347 (4th Cir. 1998)..............................................14

*Chase Bank USA, NA v. McCoy*, 131 S.Ct. 871, 880 (2011)........21,23

*Christensen v. Harris Cnty,* 529 U.S. 576 (2000).................23

*Coleman v. Whisnant*, 225 N.C. 494, 35 S.E. 2d 647 (1945)........19

*Correctional Services Corp. v. Malesko,* 534 U.S. 61, 71 (2001)..27

*Defeat The Beat v. Lloyds London,* 194 N.C. App. 108, 669 S.E.2d 48 (2008).........................................................15

*Dickinson-Russell Coal Co., v. Sec'y of Labor*, No. 13-1374 (4th Cir. 2014 March 27, 2014)...................................23,26

*E. I. du Pont de Nemours & Co. v. Kolon Industries, Inc.,* 637 F.3d 435, 440 (4th Cir. 2011).......................................12

*FDIC V. Meyer,* 510 U.S. 471, 484-86 (1994).....................27

*Fort Sumter Tours v. Babbitt,* 66 F.3d 1324 (4th Cir. 1995).....28

*Fund for Animals v. Williams,* 391 F.Supp.2d 191 (D.D.C. 2005)...28

*Gantt v. Security USA,* 356 F.3d 547, 552 (4th Cir. 2004).......27

*Gilbane Bldg. Co. v. Federal Reserve Bank of Richmond, Charlotte Branch,* 80 F.3d 895 (4th Cir. 1996)...............................14

*Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011 (1970)...........26

*Gray v. North Carolina Ins. Underwriting,* 352 N.C. 61, 529 S.E.2d 676 (2000)................................................15,21

*Harrington Manufacturing Co. v. Powell Manufacturing Co.,* 38 N.C. App. 393, 248 S.E.2d 739 (1978)..............................14,15

*McDonald v. Scarboro,* 91 N.C. App. 13, 370 S.E.2d 680 (1988)...15

*Ohio Valley Envtl. Coalition v. Aracoma Coal Co.,* 556 F.3d 177, 193 (4th Cir. 2009)................................................23

*Public Power Council v. Johnson,* 674 F.2d 791, 793 (9th Cir.1982)..................................................28

*Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790 (1963).........27

*Slochower. Board of Higher Education,* 350 U.S. 551, 76 S.Ct. 637 (1956)..................................................27

*South Atlantic Limited v. Riese,* 284 F.3d 518 (4th Cir. 2002).................................................14,19

*Speiser v. Randall,* 357 U.S. 513, 78 S.Ct. 1332 (1958).........27

*Stevenson v. City of Seat Pleasant,* No. 12-2047 (4th Cir. February 21, 2014).................................................13

*Strum v. Exxon Co., U.S.A.,* 15 F.3d 327 (4th Cir. 1994).......13

*Thomas Jefferson University v. Shalala,* 512 U.S. 504, 114 S.Ct. 2381 (1994).................................................22

*Williams v. Craft Development, LLC.,* 199 N.C. App. 500, 682 S.E.2d 719 (2009).................................................23

## **FEDERAL STATUTES**

5 U.S.C. § 552(a)(2)(A)(B).....................................28

5 U.S.C. § 706............................................13,27

10 U.S.C. § 1094.............................................17,18

28 U.S.C. § 1291................................................1

28 U.S.C. § 1331................................................1

28 U.S.C. § 1332................................................1

32 U.S.C. § 3701 *et. seq.*....................................10

38 U.S.C. § 7402..............................................17

**STATE STATUTES**

N.C.G.S. § 75-1.1....................................11,14,15,24

**RULES**

Fed.R.Civ.P. 8(a)(2)..........................................13

Fed.R.Civ.P. 12(b)(6)....................................5,7,11,12

Fed.R.Civ.P. 15(a)(1)(A).......................................5

Fed. R. Civ.P. 54(c)..........................................29

Fed.R.App.P. 4(a)(B)...........................................1

**REGULATIONS**

32 C.F.R. § 199 *et. seq.*...............................*passim*

**MISCELLANEOUS**

51 FR 24008...................................................18

## STATEMENT OF SUBJECT MATTER JURISDICTION AND BASIS FOR APPELLATE JURISDICTION

### Jurisdiction in the District Court

The United States District Court for the Eastern District of North Carolina (the "District Court") had jurisdiction over the case below under 28 U.S.C.§ 1331 as against the defendant United States and 28 U.S.C. § 1332 as against the defendant HealthNet. The District Court entered a final order disposing of all claims on March 19, 2014. (Order, DE# 93, JA p. 207)

### Jurisdiction in the Court of Appeals

The Petitioner filed a notice of appeal from the District Court's final order on May 16, 2014. (Notice of Appeal, DE# 95, JA p. 227). The notice of appeal was filed within 60 days of the final order on March 19, 2014, and therefore was timely filed. Fed. R. App. P. 4(a)(B). This court has jurisdiction over the instant appeal under 28 U.S.C. § 1291, which allows final orders of a district court to be reviewed on appeal.

1

## STATEMENT OF ISSUES FOR REVIEW

I.    WHETHER OR NOT THE DISTRICT
COURT ERRED IN HOLDING THAT THE PLAINTIFF
FAILED TO STATE A CLAIM UPON WHICH
RELIEF COULD BE GRANTED.

II.  WHETHER  OR  NOT  THE  DISTRICT
COURT    ERRED    IN    CONSTRUING    THE
NORTH CAROLINA UNFAIR AND DECEPTIVE
TRADE PRACTICES ACT.

III. WHETHER OR NOT HEALTHNET'S
CONDUCT AFTER ITS FAULTY DETERMINATION
OF DR. TAYLOR'S STATUS WAS EGREGIOUS.

IV.   WHETHER OR NOT THE DISTRICT
COURT ERRED IN ALLOWING THE AGENCY'S
INTERPRETATION OF ITS OWN REGULATIONS
DEFERENCE.

V.    WHETHER OR NOT HEALTHNET
BREACHED THE IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING.

VI.   WHETHER OR NOT TERMINATION OF
PLAINTIFF'S PROVIDER STATUS WAS
EFFECTIVE FIFTEEN DAYS AFTER THE
WRITTEN INITIAL DETERMINATION.

VII. WHETHER OR NOT DR. TAYLOR'S RIGHT TO
RECEIVE TRICARE REFERRALS AND THEREBY
PRACTICE HIS PROFESSION IS PROTECTED BY
THE FIFTH AMENDMENT TO THE CONSTITUTION.

VIII. WHETHER OR NOT THE DISTRICT COURT
ERRED IN EXEMPTING THE UNITED STATES FROM
DISCOVERY.

## STATEMENT OF THE CASE

### Nature of the Case

This is an action by S. Douglas Taylor, a physician fully licensed by the State of North Carolina, against HealthNet Federal Services, LLC, (hereinafter HealthNet), a corporation charged with administering the TRICARE program for the area including North Carolina, and the United States of America which, through its Department of Defense (hereinafter DOD), is responsible for overseeing HealthNet in operating a federally-funded health insurance program for DOD members, retirees, and dependents.

Having properly admitted plaintiff to TRICARE as an "authorized provider" in 2004, HealthNet changed its stance and in 2011 took the position that plaintiff was not eligible to be an "authorized provider" and therefore not eligible to receive any referrals of TRICARE beneficiaries. Moreover, HealthNet took the position that plaintiff had never been eligible to be an "authorized provider" and therefore owed the government all of the monies he had ever received as a TRICARE "authorized provider" in his seven years of unimpeachable service on the government's behalf, amounting to over $600,000.00.[1] The Department of Defense has at all times agreed entirely with both of HealthNet's conflicting interpretations of the applicable regulations, 32 CFR

---

[1] What HealthNet's share of the money to be recovered was to be has not yet been revealed.

3

199.1 § *et. seq.,* and stands by its most recent variation to this very day.

In the midst of the District Court proceedings the government issued a "New Final Agency Determination of Effective Date of Termination" and essentially changed the effective date of plaintiff's termination as a TRICARE "authorized provider" from April 1, 2004 until fifteen days following February 19, 2013. (DE# 56, JA p. 158). In other words, the defendants stopped saying that plaintiff owed them back the money he had earned as an "authorized provider" but plaintiff was and still is ineligible to receive further referrals of TRICARE beneficiaries, which has resulted and continues to result in the loss of $8,000.00 a month to him.

<u>Course of Proceedings</u>

Plaintiff filed this lawsuit against defendants HealthNet and the United States of America on December 20, 2011. (Complaint, DE# 2, JA p. 15). The complaint alleges that the plaintiff, Stanley Douglas Taylor, a physician residing in Jacksonville, North Carolina, was arbitrarily and illegally denied his status as a TRICARE "provider" after more than seven years of unimpeachable service as a TRICARE "provider." The suit further alleges that the United States, acting through the department of Defense, improperly condoned the actions of HealthNet in the face of governing regulations, i.e., 32 C.F.R. § 199.1 *et. seq.,* that do not support HealthNet's actions.

4

After each defendant filed its first motion to dismiss on February 2, 2012 and February 17, 2012 respectively (DE# 15, DE# 19) plaintiff filed an amended complaint as a matter of right pursuant to Fed. R. Civ.P. 15(a)(1)(A) on March 8, 2012. (Amended Complaint DE# 24, JA p. 59). The amended complaint primarily added an allegation that plaintiff had exhausted his administrative remedies to avoid the arguments presented by HealthNet in its initial memorandum in support of its 12(b)(6) motion. (DE# 24 ¶ 18). (HealthNet's Memorandum in Support of Motion to Dismiss dated February 2, 2012 DE# 16).

On March 21, 2012 the trial court issued an order directing the defendants to inform the court if their motions needed to be modified in light of the filing of the amended complaint (Order, DE# 26). Both defendants indicated by notice to the court that they would modify their motions to dismiss. (DE# 27, DE# 28). On April 25, 2012 both defendants filed their modified motions to dismiss the amended complaint together with supporting memoranda. (DE# 30, DE# 32) Plaintiff filed his response to the motions to dismiss on May 30, 2012 (DE# 38). On November 26, 2012 the trial court entered an order allowing HealthNet's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and denying the similar motion of the United States. (Order, DE# 45, JA p. 143). The order stated that it was granting HealthNet's motion to dismiss because plaintiff had not alleged that HealthNet could be described as a

5

"state actor". (Order, DE# 45 p. 6, JA p. 148). In that same order the trial court did allow the United State's motion to be exempt from discovery.

Subsequently, on December 5, 2012 the defendant United States moved to vacate the administrative decision at issue in this matter and remand for further administrative proceedings. (DE# 48). The court granted the government's motion on January 18, 2013, ordering the United States to issue a new final order pursuant to 32 C.F.R. § 199.10 and further ordering all the parties to file a notice of decision within fourteen days of the final agency order. (Order, DE# 55, JA p. 157). On March 5, 2013 the government filed its "Notice of Decision" attaching as an exhibit the new agency determination. (Notice, DE# 56, JA p. 158).

Essentially what the new agency determination did was to correct the effective date of plaintiff S. Douglas Taylor's termination of provider status from April 1, 2004 to fifteen days after February 19, 2013. (DE# 56, Exhibit "A", JA p. 162). The foregoing action on the part of the Department of Defense relieved plaintiff of any obligation that was claimed against him by the defendants for the money he had earned between 2004 and 2011.[2] But he was left without the income that had been cut off by the defendants' "termination of plaintiff's provider status," as well

---

[2] 32 C.F.R. § 199.9(g)(3) mandated this result, but was not mentioned in the determination.

6

as future income as a TRICARE provider.

On April 4, 2013 plaintiff filed a motion to amend the amended complaint which motion was granted on June 24, 2013. (Order, DE# 69).

Plaintiff then filed the second amended complaint on June 28, 2013. (Second Amended Complaint, DE# 70, JA p. 170). In the second amended complaint the plaintiff made specific allegations as to HealthNet's status in that it was a "state actor or can fairly be described as one for the purposes of Fifth Amendment analysis" mirroring the language in the court's previous order allowing the Fed. R. Civ. P. 12(b)(6) motion. (Order dated November 26, 2012 DE# 45, JA p. 143, SAC ¶ 3, DE# 70, JA p. 170). Defendant HealthNet filed their new Fed. R.Civ.P. 12(b)(6) motion on July 19, 2013 (DE# 76) and defendant United States filed their new non-specific motion to dismiss on July 19, 2013. (DE# 73, DE# 74)

Plaintiff replied to those motions on August 23, 2013. (DE# 86). On September 18, 2013 defendant United States filed its reply to plaintiff's opposition to the motion to dismiss (DE# 91) and on September 20, 2013 defendant HealthNet filed its reply. (DE# 92). On March 19, 2014 the court entered its order granting both defendants' motions to dismiss. In its order the trial court states that notwithstanding the plaintiff's allegation that HealthNet was a "state actor", that plaintiff's claim must fail for a separate reason - - that "HealthNet is a private entity allegedly

7

acting under color of federal law..." and in effect therefore was immune from suit (Order p. 8, DE#93, JA p. 207). Dr. Taylor noted his appeal to this court on May 16, 2014. (DE# 95, JA p. 227).

<u>Disposition below</u>

The District Court granted respectively the Defendants' motions to dismiss by order dated March 19, 2014.

**<u>STATEMENT OF FACTS</u>**

Plaintiff is a physician residing in the Eastern District of North Carolina who has been licensed by the North Carolina Medical Board to provide full medical services at a full and unrestricted clinical practice level since November 1996. (SAC ¶ 7, DE # 70, JA p. 173). He was deemed to be an "authorized provider" for TRICARE on April 7, 2004 (SAC ¶ 10, DE# 70, JA p. 174). From the time that he was designated as an "authorized provider" plaintiff worked faithfully, diligently, and honestly on behalf of the TRICARE program until May 18, 2011 when he received notice from defendant HealthNet that he was being terminated as a TRICARE provider and that HealthNet was intending to recover from him all of the money he had received from TRICARE during the time that he was considered by HealthNet to be an "authorized provider". (SAC ¶¶ 12-13, DE# 70, JA pp. 174-5).

When plaintiff appealed to the office of the Assistant Secretary of Defense Health Affairs, William M. Voharas replied that in order for plaintiff to appeal there must be an appealable

8

issue "which must include a dispute of fact." (SAC Exhibit "F", DE# 70-6, JA p. 194). Plaintiff continuously argued that as a matter of fact he had a North Carolina medical license and that fact alone satisfied the regulations insofar as his "authorized provider" status was concerned. 32 C.F.R. § 199.6 (c)(2)(i). (Complaint Exhibit "E", DE# 2-5, JA p. 33). After the Department of Defense made it clear he would not get any administrative relief, he filed suit in Federal Court in the Eastern District of North Carolina.

In the course of the District Court litigation, the United States moved to vacate the administrative decision in regard to plaintiff, and remand for further administrative proceedings which produced the "Final Agency Determination" with a new effective date for the termination of "provider status" with regard to Dr. Taylor following the court-ordered remand. (Order DE# 55, JA p. 157).

Throughout this entire proceeding plaintiff has contended that 32 C.F.R. § 199.6 rather than 32 C.F.R. § 199.9 governs "provider" eligibility and has always governed it. Judged by their actions, both defendants apparently agreed with plaintiff on this point from 2004 up until the time in May, 2011 that they somehow decided that 32 C.F.R. § 199.9 applied to physicians **prior** to the time they became providers, despite the fact that 32 C.F.R. § 199.9(g)(2)(i)(A) refers specifically to "provider" in the present tense, as does 32 C.F.R. § 199.9 generally.

9

The actions of HealthNet not only threatened plaintiff with a loss of present and future income, but also threatened to unleash the collections power of the Federal Government against plaintiff. Plaintiff was threatened with involuntary collections efforts under the Federal Claims Collection Act, 32 U.S.C. § 3701, *et. seq.*, as amended by the Debt Collection Act of 1982, the Debt Collection Improvement Act of 1996 (DCIA), together with interest and penalties. Plaintiff had received approximately $630,000.00 in payments from the time he was certified as an "authorized provider" until he was declared ineligible to be one. The government, through HealthNet, threatened to impose interest on the debt, a 6% per year penalty charge, and "interest and other late charges", as well as all the collection methods available to the United States under the above-cited statutes. These included referral to the Treasury Offset Program for offset from Federal income tax refunds and other amounts payable by the Government, offset from state payments, and referral to the Department of Justice for litigation. (SAC Exhibit "E", DE# 70-5, JA p. 191).

Because plaintiff has not been allowed to pursue discovery, he does not know exactly what the financial incentive was for HealthNet and the United States Government suddenly to declare plaintiff to be ineligible to be a provider and commence their attempted shakedown of the plaintiff. Clearly there was about $630,000.00 to be divided by the defendants.

10

## SUMMARY OF ARGUMENT

The Fourth Circuit considers a case *de novo* upon its review of a Rule 12(b)(6) dismissal. The court evaluates only whether the complaint states a claim to relief that is plausible on its face. The District Court misconstrued N.C.G.S. § 75-1.1, overly restricting its application so as not to make it broad enough to cover the wrongful actions of HealthNet in this case. An unfair practice under the Unfair and Deceptive Trade Practices Act is conduct which a court of equity would consider unfair viewing it against the background of actual human experience and by determining its intended and actual effects upon others. Where a party engages in conduct manifesting an inequitable assertion of power or position, such conduct constitutes an unfair act or practice. Rather than a party being able to contract its way around liability for an unfair act or practice, an action under the unfair and deceptive trade practices act is *sui generis,* and exists independently, regardless of whether a contract was breached.

Plaintiff has been fully licenced by the North Carolina Medical Board since 1996, and that is sufficient under the governing regulations for him to be an "authorized provider" for TRICARE. The Department of Defense does not go behind the judgment of the State Medical Board in evaluating whether or not a physician is qualified to be an "authorized provider". Provisions in 32 C.F.R. § 199.9 having to do with "providers having licenses in two

11

jurisdictions and losing one of those licenses" have nothing to do with the situation here.  S. Douglas Taylor has never lost a license while being a TRICARE "provider".

At the very least, the complaint states a claim for breach of contract.

**ARGUMENT**

Standard of Review

The Fourth Circuit considers the case *de novo* on review of a Rule 12(b)(6) dismissal.  See *E. I. du Pont de Nemours & Co. v. Kolon Industries., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011).

**I.    THE DISTRICT COURT ERRED IN HOLDING THAT THE PLAINTIFF FAILED TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED.**

The Fourth Circuit considers the case *de novo* on review of a Rule 12(b)(6) dismissal.  See *E. I. du Pont de Nemours & Co., v. Kolon Industries., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011). The court evaluates only whether the complaint states a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff's allegations give a reasonable inference of defendant's misconduct as alleged.  *Bell Atlantic v. Twombly,* 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007).  Plaintiff is not required to use any "precise or magical" words in his pleadings, nor any specific words to specifically state a cause of action.  Legal labels characterizing a claim cannot, standing alone, determine whether it fails to meet the standard for notice

12

pleading pursuant to Federal Rule of Civil Procedure 8(a)(2). *Stevenson v. City of Seat Pleasant,* No. 12-2047 (4th Cir. February 21, 2014) at page 17.

In a nutshell, the complaint alleges that the plaintiff S. Douglas Taylor is a physician who was certified to be an "authorized provider" by the defendant HealthNet from 2004 until his "authorized provider" status was arbitrarily revoked by HealthNet on May 18, 2011. (SAC ¶ 12 , DE# 70 , JA pp. 174-5). HealthNet attempted to obtain from plaintiff all the money he had earned through HealthNet during the time that he provided services, a sum in excess of $600,000.00, in clear violation of the applicable regulations, defaming him in the process. HealthNet's actions have cost Dr. Taylor $8,000.00 a month since May 18, 2011. The Department of Defense approved HealthNet's action toward plaintiff and, in doing so, acted "arbitrarily and capriciously" within the meaning of the Administrative Procedures Act. (DE# 70, JA p.170). 5 U.S.C. § 706(2)(A).

## II. THE DISTRICT COURT MISCONSTRUED THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT.

The District Court, citing *Strum v. Exxon Co., U.S.A.,* 15 F.3d 327 (4th Cir. 1994), set forth the idea that it was

> unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a part

13

adequately fulfilled its contractual obligations. [3] (Order dated March 19, 2014 p. 10, DE#93, JA p. 207).

It also pointed out that North Carolina law requires a showing of "substantial aggravating circumstances' to support a claim under the UDTPA." *Id.,* citing *Broussard v. Meineke Disc. Muffler Shops, Inc.,* 155 F.3d 331, 347 (4th Cir. 1998). Plaintiff submits that "unlikely as it may have appeared" to the District Court, plaintiff's complaint does indeed allege substantial aggravating circumstances sufficient to state a claim for unfair and deceptive trade practices under North Carolina law. N.C.G.S. § 75-1 *et. seq.*

What constitutes an unfair or deceptive trade practice is a "somewhat nebulous concept," and North Carolina courts base their determinations of whether an particular practice is unfair or deceptive on the circumstances of each case. "The UDTPA is both a question of law and a highly fact-specific inquiry." *South Atlantic Limited v. Riese,* 284 F. 3d 518 (4th Cir. 2002) quoting Judge Ervin in *Gilbane Bldg. Co. v. Federal Reserve Bank of Richmond, Charlotte Branch*, 80 F.3d 895 (4th Cir. 1996). An "unfair practice" under the UDTPA is

> conduct which a court of equity would consider unfair. Thus viewed, the fairness or unfairness of a particular conduct is not an abstraction to be derived by logic. Rather the fair or unfair nature of particular conduct is to be judged by viewing it against the background of actual human experience and by determining its intended and actual effects upon others.

---

[3] As noted *infra* at page 14 an unfair practice may exist "regardless of whether a contract has been breached." *Defeat The Beat, infra* at page 14.

*South Atlantic,* 284 F3d. at 535 citing *Harrington Manufacturing Co. v. Powell Manufacturing Co.,* 38 N.C.App. 393, 248 S.E.2d 739 (1978).

Where a party engages in conduct manifesting an inequitable assertion of power or position, such conduct constitutes an unfair act or practice. *Gray v. North Carolina Ins. Underwriting,* 352 N.C. 61, 529 S.E.2d 676 (2000). An action for unfair or deceptive practices is a creation of statute, and is therefore *sui generis,* so the cause of action exists independently, regardless of whether a contract was breached. *Defeat the Beat, Inc., v. Lloyd's London,* 194 N.C. App. 108, 669 S.E.2d 48 (2008). N.C.G.S. § 75-1.1 is directed toward maintaining ethical standards in dealings between persons engaged in business and to promote good faith at all levels of commerce. *McDonald v. Scarboro,* 91 N.C. App. 13, 370 S.E.2d 680 (1988).

HealthNet was guilty of engaging in unfair practices when it took the position that plaintiff was not, and never had been, eligible to be a TRICARE "provider" on the grounds that he had had his medical license revoked in New York in 1993, eleven years before he became a "provider." It began sending out letters to Dr. Taylor's patients within a month of its termination of plaintiff's status less than the sixty days provided him to appeal HealthNet's determination. (DE# 70-1, JA p. 182, DE# 17-5, Exhibit 5, JA p. 50). An examination of 32 C.F.R. § 199.6 shows that plaintiff was in fact qualified to be a provider because he had been licensed

15

after the New York revocation by the North Carolina State Medical
Board which acted with full knowledge of Dr. Taylor's past when it
licensed him.  (32 C.F.R. § 199.6(c)(2)(i)).(SAC, Exhibit C, DE#
70-3  JA p. 186).

HealthNet and the Department of Defense responded and continue
to respond to Dr. Taylor's position by arguing that 32 C.F.R. §
199.9(g)(2)(1)(a) says that

> professional providers shall remain terminated from the
> CHAMPUS until the jurisdiction(s) suspending or revoking the
> provider's license(s) to practice restores it or removes the
> impediment to restoration.

But 32 C.F.R. § 199.9 applies to professional **providers** who, while
they are **providers**, have a license revoked.  S. Douglas Taylor has
never practiced in two states under two licenses at any time since
he has been a provider - - he has practiced only in North Carolina
under a North Carolina license.   Plaintiff's argument from the
inception of this entire matter is that TRICARE regulations do not
require or permit the agency to go behind a state medical board's
determination of a physician's competence to practice medicine.

What the defendants here would have the TRICARE regulations
say is what Congress said in a different context, i.e., in
excluding doctors who have **ever** had their licenses revoked. In the
Veteran's Administration appointment context,

> (f) A person may not be employed in a position under
> subsection (b) (other than under paragraph (4) of that
> subsection) if—
> (1) the person is or has been licensed, registered, or

certified (as applicable to such position) in more than one
State; and
(2) either—
(A) any of those States has terminated such license,
registration, or certification for cause; 38 U.S.C. § 7402.

In contrast, the relevant portion of 32 C.F.R. § 199.6
essentially copies 10 U.S.C. § 1094, the licensing requirements for
health care professionals for the Department of Defense. A person
there may not provide health care "unless the current license is an
unrestricted license..." At no point in the United States Code
does any mention of a physician's prior license problems appear in
connection with his qualification to be a military doctor or a
civilian doctor employed by the Department of Defense.[4] Indeed,
the evidence will show that plaintiff was employed by the
Department of Defense at the Naval Hospital Camp Lejeune as a
pediatrician for six years immediately prior to becoming a TRICARE
provider. The Department of Defense was fully aware of his entire
licensure history throughout the time he was employed by it.

A "physician" is

a person with a degree of Doctor of Medicine (M.D.) or Doctor
of Osteopathy (D.O) who is licensed to practice medicine by an
appropriate authority. 32 C.F.R. § 199.2.

As noted earlier, 32 C.F.R. § 199.6, in setting out the

---

[4] The District Court said that 10 U.S.C. § 1094 "does not
state that the only requirement for being a TRICARE provider is
having a current license". (Order dated March 19, 2014 page 18,
DE # 93, JA p. 207). But that is exactly what 32 C.F.R. §
199.6(c)(2)(i) says. Furthermore, 10 U.S.C. § 1094 is the only
thing in the United States Code that says anything about
Department of Defense physicians' licensure.

17

requirements for a physician to be an "authorized provider", is essentially identical with the requirements set forth in 10 U.S.C. § 1094. Indeed, 10 U.S.C. § 1094 was passed on November 8, 1985 and the TRICARE regulations first appeared in the Federal Register on July 1, 1986. (51 FR 24008). At no place in the Federal Register did the Department of Defense explicitly or implicitly indicate that the licensure requirements for TRICARE providers differ from the requirements set out at 10 U.S.C. § 1094. (51 FR 24008, July 1, 1986).

### III. HEALTHNET'S CONDUCT AFTER ITS FAULTY DETERMINATION OF DR. TAYLOR'S STATUS WAS EGREGIOUS.

HealthNet sent Dr. Taylor notice that he was being terminated as a provider on May 18, 2011 (DE# 17 Exhibit 5, JA p. 50). The letter informed him at page three that he "had sixty days to request a hearing." However, before sixty days had passed, indeed, in about a month, HealthNet was sending out notices to plaintiff's patients that "it has been determined that an overpayment was made to this provider." This is one of the bases for plaintiff's allegation at paragraph six of the second amended complaint that HealthNet deliberately "and in bad faith acted with malice and reckless indifference to the livelihood and peace of mind of the plaintiff." (SAC ¶ 6 DE# 70, JA pp. 172-3). HealthNet also implied that Dr. Taylor may try to take action improperly to contact the patients and collect money from them.

Although it may be rare that the exercise of a contractual

18

> right will meet this stringent standard, it is possible for such an exercise, when it involves egregious and aggravating conduct, to constitute an unfair or deceptive trade practice under North Carolina's UTPA *South Atlantic Limited Partnership of Tennessee, LP, v. Riese,* 284 F3d. at 540.

Publication of falsehoods about a physician, especially those made before the time has expired for him to appeal the adverse determination concerning him, is "egregious and aggravating" conduct.

> Everyone has a right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit.  He has not right to be protected against competition; but he has a right to be free from malicious and wanton interference, disturbance or annoyance.  *Coleman v. Whisnant,* 225 N.C. 494, 35 S.E.2d 647(1945).

The word "malicious" in this context does not import ill will,

> but refers to interference with design of injury to plaintiff or gaining some advantage at his expense.  35 S.E.2d at 656.

In this case it is very clear that plaintiff was at no point overpaid, even if HealthNet's reading of the eligibility portion of the regulations had been correct. As shown on the "Final Agency Determination of TRICARE Authorized Status after Court Remand" (SAC Exhibit "H" DE# 70-8, JA p. 199), which corrected the date of the termination of plaintiff's "authorized provider" status until fifteen days following February 19, 2013, as well as by 32 C.F.R. § 199.9(g)(3) which protects the earnings of even a properly disqualified provider "for claims from a jurisdiction from which he/she had a valid license." Plaintiff never has been liable to any entity for the money he had earned as an "authorized provider".

19

(SAC Exhibit H, page 7 DE# 70 JA p. 205; 32 C.F.R. § 199.9(g)(3)).

Furthermore, plaintiff alleges that over twenty-nine thousand letters to plaintiff's current and former patients similar to Exhibit "A" to the second amended complaint were mailed out by HealthNet. [5] (SAC ¶ 6.c., DE# 70, JA p. 173).

Dr. Taylor, it must be remembered, is practicing medicine in a community where a substantial portion of the population is connected to the military by virtue of Jacksonville, North Carolina being the home of Marine Corps Base, Camp Lejeune, North Carolina. He is located there because he was deemed eligible and was certified to be an authorized provider for TRICARE purposes, and therefore entitled to receive referrals to providing care to military dependents. Because of HealthNet's arbitrary actions Dr. Taylor's loss is $8,000.00 a month. (SAC ¶ 6.b., DE# 70, JA p. 173). Cutting off a substantial part of Dr. Taylor's income after Dr. Taylor was in part induced to attempt to earn a livelihood where he did because of the actions of HealthNet is certainly a substantially aggravating factor.

Among other things, it severely handicaps his ability to litigate against the multi-billion dollar corporation he faces here. Further, plaintiff will show upon the evidence being brought out in this matter, that HealthNet had a selfish purpose to profit

---

[5] Dr. Taylor had never billed a TRICARE patient for a disallowed claim. HealthNet had no reason to think he would do such a thing.

20

at plaintiff's expense by recouping the more than $600,000.00 that plaintiff had earned since the time he was authorized to be a provider. This is truly a case where HealthNet has engaged in conduct manifesting an inequitable assertion of power or position, thus qualifying as an unfair act or practice. *Gray v. North Carolina Ins. Underwriting,* supra.

### IV. THE AGENCY'S INTERPRETATION OF ITS OWN REGULATIONS IS ENTITLED TO NO DEFERENCE BECAUSE THE REGULATIONS ARE NOT AMBIGUOUS AND THE PLAIN LANGUAGE OF THE REGULATIONS CONTROLS.

At page 16 of its order dated March 19, 2014 the District Court said that

> TMA's interpretations of its own regulations is to be accorded deference in this case because it is not "plainly erroneous or inconsistent with the regulation" citing *Chase Bank USA, N.A. v. McCoy*, 131 S.Ct. 871, 880 (2011). Moreover, an agency's interpretation of its own regulation is to be accorded deference, "unless that interpretation is 'plainly erroneous or inconsistent with the regulation'" 131 S.Ct. at 880.

But plaintiff must beg to ask "which of the agency's interpretations is more entitled to deference?" There were at least two interpretations held consecutively by HealthNet and the Department of Defense.

When plaintiff applied to be an "authorized provider" and when he was re-certified to be an "authorized provider" he plainly told HealthNet that he had had licensure problems in the past and detailed those, explicitly pointing out that his New York license

had been revoked in 1993.[6] (Exhibit A, Complaint DE# 2-1, JA p. 20).  It was not until May 18, 2011 that HealthNet read 32 C.F.R. § 199.9 (g)(2)(i) which states "a provider who has licenses to practice in two or more jurisdictions and has one of more license(s) suspended or revoked will also be terminated as a TRICARE provider" to apply to Dr. Taylor, who had lost a license in New York ten years before becoming a "provider."[7]  HealthNet knew plaintiff had lost a medical license in November, 1993 during the whole time that he was certified by HealthNet as a "provider" - - and rightfully so.  He was qualified under 32 C.F.R. § 199.6.[8]

Furthermore, while they are tedious and difficult to cite, the TRICARE regulations are to no degree "ambiguous" on this point.  32 C.F.R. § 199.6 (c)(2)(i) declares that a physician licensed by the state medical board is entitled to be certified as a "provider." In contrast, 32 C.F.R. § 199.9 (g)(2)(i) says that if **[after** becoming a provider]** that person loses one of two or more medical

---

[6] Note that on the application form, plaintiff volunteered this information although the question was not asked.  The question was "in the last five years...".

[7] Once again, plaintiff was never a "provider who had licenses to practice in two or more jurisdictions".

[8] "Even were some deference appropriate, an agency interpretation that conflicts with any prior agency interpretation is entitled to considerably less deference than a consistently held agency view." *Thomas Jefferson University v. Shalala,* 512 U.S. 504, at 515, 114 S.Ct. 2381 (1994) quoted by *American Airlines v. U.S.,* 551 F3d 1294, 1301 (Fed. Cir. 2008).

licenses that person will be terminated as a TRICARE "provider."[9]

> *Auer* [10] deference, like *Chevron* deference, [i.e. deference to an agency's interpretation of a regulation] "is warranted only when the language of the regulation is ambiguous". *Christensen v. Harris Cnty.,* 529 U.S. 576 (2000). When the "regulation in question [is] unambiguous, ... adopting the agency's contrary interpretation would permit the agency, under the guise of interpreting a regulation, to create <u>de facto</u> a new regulation." *Chase Bank*, *USA, N.A. v. McCoy,* 131 S.Ct. 871, 882 (2011) Thus, our first task is to "determine whether the regulation itself is unambiguous; if so, its <u>plain language controls</u>." *Dickinson-Russell Coal Co. v. Sec'y of Labor,* No. 13-1374 (4th Cir. 2014 March 27, 2014, Slip Op. at pp. 12-13). *Ohio Valley Envtl. Coalition v. Aracoma Coal Co.,* 556 F.3d 177, 193 (4th Cir. 2009) (emphasis added.)

## V. DEFENDANT HEALTHNET BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement. *Williams v. Craft Development, LLC., 199* N.C. App. 500, 682 S.E. 2d 719 (2009) quoting *Bicycle Transit Authority v. Bell,* 314 N.C. 219, 228, 333 S.E. 2d 299, 305 (1985). Under North Carolina law, when a person acts under circumstances of oppression he is liable for punitive damages, or at the plaintiff's election, for unfair and

---

[9] The Final Agency Determination says at page 5 "The TRICARE regulation does not prescribe nor require an application process to be a TRICARE authorized provider..." implying that the Agency was unaware of plaintiff's prior licensure problems. But the point in time when it took the position that a license revocation <u>terminates</u> a provider's status ten years before the status is achieved is unknown. What action it took to keep doctors in Dr. Taylor's position out of the program is also unknown at this point.

[10] *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905 (1997).

deceptive trade practices. *Atlantic Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 719 n.2 (4th Cir. 1983), N.C.G.S. 75-1.1.

The scheme of HealthNet, as it related to plaintiff, was to obtain all the money he had ever earned through TRICARE by employing the collection methods approved by 32 C.F.R. § 199 *et. seq.*, the TRICARE regulations. This was one of the practices which a court of equity would consider unfair. Although HealthNet was halted in its attempt to extort money from Dr. Taylor, the result of HealthNet's scheme has been the loss of $8,000.00 a month in Dr. Taylor's income since May 18, 2011.

### VI. EVEN IF HEALTHNET HAD BEEN CORRECT IN ITS INTERPRETATION OF 32 C.F.R. § 199.9, UNDER 32 C.F.R. § 199.9 TERMINATION OF PLAINTIFF'S PROVIDER STATUS WAS NOT EFFECTIVE UNTIL FIFTEEN DAYS AFTER THE WRITTEN INITIAL DETERMINATION.

In its order of November 26, 2012 at pages 10 and 11 the District Court questioned the retroactive effect of the revocation of plaintiff's authorized provider status. The United States responded by issuing a new "Final Agency Determination of TRICARE Authorized Provider Status Following Court Ordered Remand" (DE # 56, Attachment A, JA p. 162) and changed the effective date of his termination from April 4, 2004 to fifteen days after February 19, 2013, thus eliminating HealthNet's and the government's claim against Dr. Taylor for the money he had earned as a TRICARE provider.

24

The action on the part of the Court and the Agency to counteract the retroactive effect of HealthNet's action were actually not necessary because 32 C.F.R. § 199.9 (g)(3) states:

> If the CHAMPUS provider status is terminated due to the loss of the provider's license, the effective date shall be retroactive to the date the provider lost the license; however, in the case of a professional provider who has licenses in two or more jurisdictions and submitted claims from a jurisdiction from which he/she had a valid license, the effective date of the termination will be 15 calendar days from the date of the written initial determination of termination for purposes of claims <u>from the jurisdiction in which the provider still has a valid license</u>. (Emphasis added).

The money that HealthNet was trying to recover was money Dr. Taylor earned in North Carolina where he still had and continues to have a "valid license". HealthNet had no business threatening plaintiff with the remedies found in the federal debts collection statutes or defaming him to his former patients to begin with.[11] Note further that 32 C.F.R. § 199.9(g)(3) speaks of the loss of the **"provider's** license". It speaks of an effective date to be retroactive to the date the **provider** lost the license. If the defendants' interpretations of the regulations are to be accepted, plaintiff was <u>terminated</u> as a provider ten years <u>before</u> he was ever certified as a provider. Rather than "sensibly conforming to the purpose and wording of the regulations" having a status terminate

---

[11] The District Court found that plaintiff had not stated a claim for defamation. (Order dated March 19, 2014 p. 10, DE # 93, JA p. 216). Plaintiff did not intend to state a separate claim. He was merely detailing the facts. HealthNet was indifferent to Dr. Taylor's welfare and reputation.

before it begins is a truly absurd abuse of the English language and consequently an abuse of the regulations. *Dickinson-Russell Coal, Co., supra* at p. 12.    Moreover, 32 C.F.R. § 199.9 does not authorize the use of administrative remedies for "fraud, abuse and conflict of interest" in termination situations like Dr. Taylor's in any event.  Note the contrast between 32 C.F.R. § 199.9 (a)(1) and (a) (3).

HealthNet had no business whatsoever, under any reading of the regulations, to send letters to Dr. Taylor's patients saying in effect "this man was over paid.  If he tries to get any money from you (illegally), call us."  (DE# 24-1, Exhibit "A", JA p. 68).  In the "background of actual human experience" the "intended effect" of these letters was not to be a positive one on Dr. Taylor.  *South Atlantic, supra.*[12]

### VII. DR. TAYLOR'S RIGHT TO RECEIVE TRICARE REFERRALS AND THEREBY PRACTICE HIS PROFESSION IS PROTECTED BY THE FIFTH AMENDMENT TO THE CONSTITUTION.

In *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011 (1970) the Supreme Court said of public assistance payments:

---

[12] The District Court said these letters "[do] not tend to impute dishonesty on plaintiff..." (November 26, 2012 order at page 7, DE# 45 JA p. 149).  But the letters do say he was over paid which is untrue, no matter how one reads the regulations. 32 C.F.R. § 199.9(g)(3).  Further the letter implies plaintiff may further his attempt to be "over paid" by contacting the patient.  The letters are harmful to Dr. Taylor's reputation and HealthNet had no business sending them.  HealthNet's sending of the letters is an "aggravating factor" in the UFDTP context.

Such benefits are a matter of statutory entitlement for persons qualified to receive them. Their termination involves state action that adjudicates important rights. The constitutional challenge cannot be answered by an argument that public assistance benefits are 'a 'privilege' and not a 'right' (citation omitted). Relevant constitutional restrains apply as much to the withdrawal of public assistance benefits as to disqualification for unemployment compensation, *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790 (1963), or to denial of a tax exemption, *Speiser v. Randall,* 357 U.S. 513, 78 S.Ct. 1332 (1958), or to discharge from public employment *Slochower v. Board of Higher Education,* 350 U.S. 551, 76 S.Ct. 637 (1956). 397 U.S. at 362.

Plaintiff alleges in the second amended complaint that HealthNet as well as the United States of America are subject to the Fifth Amendment prohibiting depriving a person of property without due process of law. The District Court held that HealthNet was as immune from suit as the corporate defendants in *FDIC v. Meyer,* 510 U.S. 471, 484-86 (1994), *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 71 (2001), and *Gantt v. Security USA,* 356 F.3d 547, 552 (4th Cir. 2004). The Court reasoned that an action against HealthNet was per se a "Bivens Action", despite the fact that HealthNet was not being sued on the basis of derivative liability but was being sued on its direct liability based upon its "corporate policy to do harm to plaintiff". (SAC ¶ 3, DE# 70, JA p. 170). (Order dated March 19, 2014 DE# 93, p. 8, JA p. 214).

Under 5 U.S.C. § 706 a reviewing court  shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or contrary to constitutional right. Plaintiff

27

submits that he has made sufficient allegations to bring himself within the protection of the Administrative Procedures Act.

### VIII. THE DISTRICT COURT ERRED IN EXEMPTING THE UNITED STATES FROM DISCOVERY.

The District Court exempted the defendant United States from discovery. We have not yet seen what it will propound as the administrative record. We know that 5 U.S.C. § 552 provides that the agency is required to make available final opinions and "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register". 5 U.S.C. § 552 (a)(2)(A)(B). Even *Fort Sumter Tours v. Babbitt,* 66 F.3d 1324 (4th Cir. 1995) says "however, although review is based on a limited record, "there may be circumstances to justify expanding the record or permitting discovery." citing *Public Power Council v. Johnson,* 674 F.2d 791, 793 (9th Cir.1982). **66 F.3d at 1336.**

Moreover, *Fund for Animals v. Williams,* 391 FSupp 2d 191 (DDC 2005), also cited by the District Court, allowed plaintiffs to supplement the administrative record propounded to ensure fair review of an agency decision to ensure that the administrative record contains "neither more nor less" information than was before the agency and the court directed the agency to collect those materials "that were compiled by the agency that were before the agency at the time the decision was made." 391 F.Supp at 622.

Plaintiff does not concede that what the United States will present as its administrative record will necessarily be the entire administrative record. The United States is well able to defend itself using the measures contained in the Federal Rules to shield itself from oppressive discovery requests. Given the showing that plaintiff makes here, he submits that he is entitled to give the finders of fact in this case a full picture of what took place vis-a-vis HealthNet and the Department of Defense in determining who was responsible for what has happened to Dr. Taylor.

<u>**CONCLUSION**</u>

For the foregoing reasons, plaintiff prays the court to reverse the decision of the United States District Court for the Eastern District of North Carolina, and to remand this case with instructions that the court order the defendants to reinstate plaintiff as an "authorized provider" for TRICARE purposes, and to reimburse him for the income he could reasonably expected to have earned from TRICARE since May 18, 2011, that it grant plaintiff all the relief to which he is entitled pursuant to Fed.R.Civ.P. 54(c), together with such other and further relief as to the court seems just and proper.

29

## **REQUEST FOR ORAL ARGUMENT**

Plaintiff respectfully requests oral argument.

Respectfully Submitted
S. DOUGLAS TAYLOR
By counsel

/s/ Jeffrey S. Miller
JEFFREY S. MILLER
Attorney for Petitioner-
Appellant
716 Court Street
Post Office Box 909
Jacksonville, NC 28541-0909
Telephone:(910) 455-8000
Facsimile:(910) 455-9977
NC State Bar Number:7228

30

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief has been prepared using fourteen point, proportionally spaced, serif typeface, specifically WordPerfect 7, Courier New, 12 point.

2.    Exclusive of the table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains 30 pages.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.


 /s/ Jeffrey S. Miller
Jeffrey S. Miller

31

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25, I hereby certify that this 25th day of August, 2014, eight copies of the foregoing Brief of Appellant with six copies of the corresponding Joint Appendix were hand-delivered to the Clerk's Office of the United States Court of Appeals for the Fourth Circuit, and I further certify that the same date a copy of the Brief of Appellant and Joint Appendix were electronically filed with the Clerk's Office using the Court's CM/ECF system which will send notification of such filing to:

> Matthew Fesak, AUSA
> Office of the U.S. Attorney
> Suite 800, Federal Bldg.
> 310 New Bern Avenue
> Raleigh, NC 27601
> matthew.fesak@usdoj.gov
> Counsel for United States
>
> James R. Holland
> Smith Moore Leatherwood LLP
> Suite 301
> 300 North 3rd Street
> Wilmington, NC 28401
> jay.holland@smithmoorelaw.com
> Counsel for Appellee
> Health Net Federal Services, LLC
>
>
> Christopher Flynn
> Crowell & Moring LLP
> 1001 Pennsylvania Ave., NW
> Washington, DC 20004
> cflynn@crowell.com
> Counsel for Appellee Health Net Federal Services, LLC
>
>
> Elizabeth B. Scherer
> Smith Moore Leatherwood LLP
> 434 Fayetteville Street
> 2 Hanover Square
> Raleigh, NC 27601
> (919) 755-8700
> beth.scherer@smithmoorelaw.com
> Counsel for Appellee Health Net Federal Services, LLC

/s/ May Serafim
Lantagne Legal Printing
801 East Main Street, Suite 100
Richmond, Virginia 23219
(804) 644-0477