BRIEF FOR APPELLEES

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

NO. 14-1476
_____

S. DOUGLAS TAYLOR, M.D.,
Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA and
HEALTH NET FEDERAL SERVICES LLC,
Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

JOINT ANSWERING BRIEF FOR APPELLEES

| | |
|---|---|
| Christopher Flynn | THOMAS G. WALKER |
| CROWELL & MORING LLP | United States Attorney |
| 1001 Pennsylvania Ave., NW | |
| Washington, D.C. 20004 | BY:  MATTHEW L. FESAK |
| Telephone: (202) 624-2864 | Assistant United States Attorney |
| | 310 New Bern Avenue |
| James R. Holland | Suite 800 |
| SMITH MOORE LEATHERWOOD LLP | Raleigh, North Carolina 27601 |
| 300 North 3rd Street | Telephone:  (919) 856-4530 |
| Suite 301 | Attorney for the United States |
| Wilmington, NC 28401 | |
| Telephone: (910) 815-7165 | |

Elizabeth Brooks Scherer
SMITH MOORE LEATHERWOOD LLP
434 Fayetteville Street
Suite 2800
Raleigh, NC 27601
Telephone: (919) 755-8700
Attorneys for Health Net
Federal Services, LLC00 North
3rd Street

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1476__        Caption: S. Taylor v. United States of America; Health Net Federal Services

Pursuant to FRAP 26.1 and Local Rule 26.1,

Health Net Federal Services LLC
_____
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                    ☑ YES ☐ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
     Health Net Federal Services LLC is a wholly-owned subsidiary of Health Net, Inc.

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☑ YES ☐ NO
     If yes, identify all such owners:
     Health Net, Inc. is a publicly-traded holding company that owns numerous subsidiaries that operate health plans and sell a variety of health insurance products and provides healthcare-related and administrative services to government agencies and other entities.

10/28/2013 SCC                       - 1 -

4.　　Is there any other publicly held corporation or other publicly held entity that has a direct
　　　financial interest in the outcome of the litigation (Local Rule 26.1(b))?　　☐YES ☑NO
　　　If yes, identify entity and nature of interest:

5.　　Is party a trade association? (amici curiae do not complete this question)　☐YES ☑NO
　　　If yes, identify any publicly held member whose stock or equity value could be affected
　　　substantially by the outcome of the proceeding or whose claims the trade association is
　　　pursuing in a representative capacity, or state that there is no such member:

6.　　Does this case arise out of a bankruptcy proceeding?　　　　　　　　　☐YES ☑NO
　　　If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Elizabeth Brooks Scherer　　　　　　　Date:　　May 29, 2014

Counsel for: Health Net Federal Services LLC

# CERTIFICATE OF SERVICE
**************************

I certify that on ____May 29, 2014____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Matthew Fesak (CM/ECF)
Jeffrey Stephen Miller (CM/ECF)
James Richard Holland (CM/ECF)

/s/ Elizabeth Brooks Scherer　　　　　　　　　　May 29, 2014
(signature)　　　　　　　　　　　　　　　　　　　　(date)

- 2 -

TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................iv

STATEMENT OF JURISDICTION..........................................1

STATEMENT OF ISSUES................................................2

STATEMENT OF FACTS.................................................3

SUMMARY OF ARGUMENT................................................8

ARGUMENT..........................................................12

      I.     THE AGENCY'S DECISION TO UPHOLD HEALTH
           NET'S EXCLUSION OF DR. TAYLOR FROM THE
           TRICARE PROGRAM IS REASONABLE AND
           CONSISTENT WITH ITS REGULATIONS....................12

           A.  Standard of Review............................12

           B.  Discussion of Issue...........................13

      II.    THE DISTRICT COURT CORRECTLY DISMISSED
           THE CLAIMS AGAINST HEALTH NET WITH
           PREJUDICE..........................................21

           A.  Standard of Review............................21

           B.  Discussion of Issue...........................22

1. The District Court Correctly Held that Dr. Taylor Failed to State a Claim Under the North Carolina Unfair and Deceptive Trade Practices Act....................................22

    a. Dr. Taylor Failed to Plead Any Unfair or Deceptive Trade Practice or Substantial Aggravating Circumstances......22

    b. Dr. Taylor Has Not Alleged that Health Net's Actions Harmed Consumers or Were Otherwise "in or Affecting Commerce".......29

    c. Dr. Taylor Has Not Alleged Enough to Show that Health Net Proximately Caused His Alleged Injuries.......................31

2. Dr. Taylor Cannot State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing...................................32

3. Dr. Taylor Failed to State a Due Process Claim Against Health Net......................34

    a. Dr. Taylor Failed to State a Substantive Due Process Claim.........................35

    b. Dr. Taylor Failed to State a Procedural Due Process Claim...............42

III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY EXEMPTING THE UNITED STATES FROM DISCOVERY.....................................51

    A. Standard of Review............................51

    B. Discussion of Issue...........................51

CONCLUSION.....................................................54

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

iii

TABLE OF AUTHORITIES

Ad Hoc Metals Coal. v. Whitman, 27 F. Supp. 2d 134
  (D.D.C. 2002)...............................................52

Ashcroft v. Iqbal, 556 U.S. 662 (2009)................21, 37, 43

Auer v. Robbins, 519 U.S. 452 (1997).......................6, 13

Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530
  (4th Cir. 1989)........................................passim

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)...........21

Bivens v. Six Unknown Named Agents of Federal Bureau of
  Narcotics, 403 U.S. 388 (1971).........................passim

Board of Regents of State Colleges v. Roth, 408 U.S.
  564 (1972).................................................45

Bowens v. N.C. Department of Human Resources, 710 F.2d
  1015 (4th Cir. 1983)...................................47, 48

Branch Banking & Trust Co. v. Thompson, 107 N.C. App.
  53 S.E.2d 694 (1992).......................................24

Bush v. Lucas, 462 U.S. 367 (1983)............................37

Broussard v. Meineke Discount Muffler Shops, Inc.,
  155 F.3d 331 (4th Cir. 1998)...........................24, 29

Camp v. Pitts, 411 U.S. 138 (1973)......................11, 51-52

Canady v. Crestar Mortg. Corp., 109 F.3d 969
  (4th Cir. 1997)............................................25

Carcano v. JBSS, LLC, 200 N.C. App. 162, 684 S.E.2d 41
  (2009).................................................23, 27-28

Cervoni v. Sec'y of Health, Ed. And Welfare,
  581 F.2d 1010 (1st Cir. 1978)..............................48

Charles v. Baesler, 910 F.2d 1349 (6th Cir. 1990).............40

Chevron U.S.A., Inc. v. Natural Resources
  Defense Council, Inc., 467 U.S. 837 (1984).................13

iv

Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971)....................................................12

Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324 (4th Cir. 2009)..............................32

Cnty. of Sacramento v. Lewis, 523 U.S. 833 (1998).........40, 41

Coastland Corp. v Currituck Cnty., 734 F.2d 175 (4th Cir. 1984).......................................46, 47

Correction Services Corp. v. Malesko, 534 U.S. 61 (2001).................................................passim

Dalton v. Camp, 353 N.C. 647, 548 S.E.2d 704 (2001).......22, 23

Decker v. Northwest Environmental Defense Ctr., 133 S. Ct. 1326 (2013)..........................................13

Deltacom, Inc. v. Budget Telecom, Inc., No. 5:10-CV-38-FL, 2011 WL 2036676 (E.D.N.C. May 22, 2011)..................29

Defeat the Beat, Inc. v. Underwriters at Lloyd's London, 194 N.C. App. 108, 669 S.E.2d 48 (2008)..............26

Durling v. King, 146 N.C. App. 483, 554 S.E.2d 1 (2001).................................................30

Erickson v. United States, 67 F.3d 858 (9th Cir. 1995)........................................48

Fayetteville Area Chamber of Commerce v. Volpe, 515 F.2d 1021 (4th Cir. 1975).................................52

Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471 (1994).................................................35

Flaim v. Medical College of Ohio, 418 F.3d 629 (6th Cir. 2005)........................................53

Food Lion, Inc. v. Cap. Cities/ABC, Inc., 194 F.3d 505 (4th Cir. 1999)........................................30

Fort Sumter Tours, Inc. v. Babbitt, 66 F.3d 1324 (4th Cir. 1995).......................................51, 52

Fund for Animals v. Williams, 391 F. Supp. 2d 191
(D.D.C. 2005)................................................52

Gantt v. Sec., USA, Inc., 356 F.3d 547
(4th Cir. 2004).........................................36, 49

HAJMM Co. v. House of Raeford Farms, Inc., 328 N.C. 578
S.E.2d 483 (1991).........................................30

Hawkins v. Freeman, 195 F.3d 732
(4th Cir. 1999)......................................35, 40, 41

Holly v. Scott, 434 F.3d 287 (4th Cir. 2006)...............47-48

Huang v. Board of Governors of University of N.C.,
902 F.2d 1134 (4th Cir. 1990)...........................39, 41

Hyatt v. Town of Lake Lure, 314 F. Supp. 2d 562
(W.D.N.C. 2003)...........................................49

James v. Servicesource, Inc., 555 F. Supp. 2d 628
(E.D. Va. 2008)...........................................36

Jarvis v. Regan, 833 F.2d 149 (9th Cir. 1987)................53

Kelly v. Georgia-Pacific LLC, 671 F. Supp. 2d 785
(E.D.N.C. 2009)...........................................32

Koerpel v. Heckler, 797 F.2d 858 (10th Cir. 1986).............48

Local 342, Long Island Public Serv. Employees v. Town
Board of Huntington, 31 F.3d 1191 (2d Cir. 1994)...........39

Marshall v. Cuomo, 192 F.3d 473 (4th Cir. 1999)...............12

Maryland Department of Human Resources v. USDA, 976
F.2d 1462 (4th Cir. 1992).................................12

McLamb v. T.P. Inc., 173 N.C. App. 586, 619 S.E.2d 577
(2005)....................................................22

Minneci v. Pollard, 132 S. Ct. 617 (2012).....................38

Mora v. Gaithersburg, 519 F.3d 216 (4th Cir. 2008).............49

Muth v. United States, 1 F.3d 246 (4th Cir. 1993).........33, 42

Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591
    F.3d 250 (4th Cir. 2009)....................................21

Nicholas v. Wyndham Intern., Inc., 373 F.3d 537
    (4th Cir. 2004)...........................................51

Paul v. Davis, 424 U.S. 693 (1976).........................43-44

PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212
    (4th Cir. 2009)........................................24, 29

Piney Run Preservation Association v. Cnty. Comm'rs
    of Carroll Cnty., Md., 268 F.3d 255 (4th Cir. 2001).........13

Regional Management Corp. v. Legal Services Corp., 186
    F.3d 457 (4th Cir. 1999)..................................34

S. Atlantic Ltd. Partnership of Tenn., LP v. Riese, 284
    F.3d 518 (4th Cir. 2002)..................................25

Schweiker v. Chilicky, 487 U.S. 412 (1988)................37, 38

Shirvinski v. United States Coast Guard, 673 F.3d 308
    (4th Cir. 2012)........................................43, 45

Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769
    (4th Cir. 2013)...........................................43

Sunrise Corp. v. City of Myrtle Beach, 420 F.3d 322
    (4th Cir. 2005)...........................................50

Sylvia Development Corp. v. Calvert Cnty., Md., 48 F.3d
    810 (4th Cir. 1995)...............................40, 41, 50

Thomas Jefferson University v. Shalala, 512 U.S. 504
    (1994)....................................................18

Tri-Cnty. Paving, Inc. v. Ashe Cnty., 281 F.3d 430
    (4th Cir. 2002)...........................................46

Volvo Trucks of N. America, Inc. v. United States, 367
    F.3d 204 (4th Cir. 2004)..................................19

Washington v. Glucksberg, 521 U.S. 702 (1997)................39

Williams v. Craft Development, LLC, 199 N.C. App. 500,
    682 S.E.2d 719 (2009) ....................................33

<u>Zepp v. Rehrmann</u>, 79 F.3d 381 (4th Cir. 1996)..............43, 44

<u>STATUTES</u>

32 C.F.R. § Part 199.......................................15

32 C.F.R. § 199.2...........................................5

32 C.F.R. § 199.6..........................................15

32 C.F.R. § 199.6(a)(15)...............................16, 18

32 C.F.R. § 199.6(c)(2)....................................15

32 C.F.R. § 199.9..........................................16

32 C.F.R. § 199.9(a)(2)....................................18

32 C.F.R. § 199.9(g)(2)................................16, 19

32 C.F.R. § 199.9(g)(2)(i)............................passim

32 C.F.R. § 199.9(g)(2)(i)(A)..............................17

32 C.F.R. § 199.9(g)(2)(ii)............................14, 19

32 C.F.R. § 199.9(h).......................................38

32 C.F.R. § 199.9(h)(3)................................38, 49

32 C.F.R. § 199.9(h)(4)................................38, 49

32 C.F.R. § 199.10.....................................38, 41

32 C.F.R. § 199.17(p)(1)...................................15

32 C.F.R. § 199.17(q)(5)...............................24, 46

5 U.S.C. § 702..............................................1

5 U.S.C. § 706.............................................34

5 U.S.C. § 706(2)(A).......................................12

10 U.S.C. § 1073(a)(2).....................................15

10 U.S.C. § 1094(a)........................................14

10 U.S.C. § 1094(a)(1).....................................15

10 U.S.C. § 1094(b)........................................14

10 U.S.C. § 1094(d)........................................14

10 U.S.C. § 1097...........................................15

28 U.S.C. § 1291............................................1

28 U.S.C. § 1331............................................1

28 U.S.C. § 1332............................................1

28 U.S.C. § 1367............................................1

42 U.S.C. § 1983........................................47-48

N.C. Gen. Stat. § 75-1.1.........................2, 6-7, 22

N.C. Gen. Stat. § 75-1.1(b)................................31

RULES

Fed. R. Civ. P. 12(b)(6)................................1, 21

Fed. R. Civ. P. 26(f)......................................51

## STATEMENT OF JURISDICTION

Appellant S. Douglas Taylor, M.D. ("Dr. Taylor") appeals from an adverse judgment of the district court dismissing his second amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Jurisdiction to the district court was established by 28 U.S.C. §§ 1331, 1332, 1367, and 5 U.S.C. § 702.

Jurisdiction to this Court is provided by 28 U.S.C. § 1291. The judgment was entered on March 19, 2014, and Dr. Taylor filed a timely notice of appeal on May 16, 2014.

## STATEMENT OF ISSUES

1.    Whether the agency's decision to uphold Health Net Federal Services, LLC's ("Health Net") exclusion of Dr. Taylor from the TRICARE program was reasonable and consistent with the agency's own regulations, which require the termination of any physician who has licenses to practice in two or more jurisdictions and has one or more of those license(s) suspended or revoked.

2. Whether the district court correctly held that Dr. Taylor's conclusory allegations failed to state a claim against Health Net under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 <u>et seq.</u>

3.    Whether Dr. Taylor's claim that Health Net violated the implied covenant of good faith and fair dealing, raised for the first time on appeal, is untimely and, if not, whether Dr. Taylor failed to allege facts to support such a claim.

4.    Whether the district court correctly held that Dr. Taylor's conclusory allegations failed to state a due process claim against Health Net or the United States.

5.    Whether the district court acted within its discretion in exempting the United States from discovery outside the administrative record.

STATEMENT OF FACTS

This litigation arises from Health Net Federal Services, LLC's ("Health Net") discovery during a routine physician credentials review that Dr. Taylor's license to practice medicine had been revoked in New York since 1993. (J.A. 210). Based on the applicable federal statute and regulations, the revocation of Dr. Taylor's New York license to practice medicine meant that he was not a "qualified provider" authorized to provide health care services under the federal TRICARE program (which is the managed health care program that provides benefits to active members of the uniformed services and their dependents). (J.A. 51-53, 209-11). Accordingly, Health Net terminated Dr. Taylor's contract to provide TRICARE medical services. Dr. Taylor appealed Health Net's determination to Tricare Management Activity ("TMA") – the federal agency charged with overseeing the TRICARE program.[1] (J.A. 211). Ultimately, both TMA and the district court agreed that Dr. Taylor was not qualified to provide medical services under TRICARE's regulations and upheld the termination of his contract as an authorized TRICARE provider. (J.A. 199-206, 220-25). This appeal is a continuation of Dr. Taylor's efforts to challenge

---

[1] The administrative functions of TMA were transferred to the newly created Defense Health Agency ("DHA") effective October 1, 2013.

his termination as an authorized TRICARE medical provider while his medical license remains revoked in New York.

On December 20, 2011, Dr. Taylor filed a complaint in the district court asserting a claim under the Administrative Procedure Act ("APA") against the United States and a claim for money damages against Health Net, the Managed Care Support Contractor with administrative responsibility over the TRICARE North Region, which includes North Carolina. (J.A. 15-34). Both the United States and Health Net filed motions to dismiss Dr. Taylor's complaint for failure to state a claim. (J.A. 4, DE ## 15, 19).[2] Before those motions were ripe for decision, Dr. Taylor filed his first amended complaint restating the APA claim against the United States and asserting claims under the Fifth Amendment to the United States Constitution, as well as North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") and the common law of defamation, against Health Net. (J.A. 59-84).[3] Both defendants then renewed their motions to dismiss with respect to the amended complaint. (J.A. 6, DE ## 30, 32).

On November 26, 2012, the district court entered an order granting Health Net's motion to dismiss, but denying the United

---

[2] "DE #" refers to the numbered Docket Entry on the district court's docket.

[3] Dr. Taylor has since acknowledged he did not intend to state a separate cause of action for defamation. (Brief at 25 n.11).

4

States' motion to dismiss largely on the basis of TMA's failure to consider the merits of the various legal issues that Dr. Taylor had raised on appeal.[4] (J.A. 143-56). In response to the district court's order, the United States filed a motion to remand this matter to TMA for further administrative proceedings, which the district court granted on January 18, 2013. (J.A. 157).

On February 19, 2013, TMA issued a new final decision upholding the termination of Dr. Taylor's authorized TRICARE provider status, but modified the effective date of the termination to make it prospective rather than retroactive. (J.A. 158-69). The district court then allowed Dr. Taylor to reopen the district court case and file a second amended complaint challenging the new final agency determination under the APA and reasserting essentially the same claims against Health Net that the district court had previously dismissed. (J.A. 170-206). The United States and Health Net again moved to dismiss Dr. Taylor's second amended complaint for failure to state a claim. (J.A. 11, DE ## 74, 76).

---

[4] TMA initially dismissed Dr. Taylor's administrative appeal without reaching the merits because Dr. Taylor did not dispute that his New York license had been and was still revoked, and therefore failed to raise a factual dispute as is necessary to create an appealable issue under the agency's regulations. (J.A. 194-98); 32 C.F.R. § 199.2 (defining "appealable issue").

On March 19, 2014, the district court granted both motions to dismiss. (J.A. 207-26). With respect to the APA claim against the United States, the district court accorded the agency decision deference under Auer v. Robbins, 519 U.S. 452, 461 (1997), and similar authorities, and found that TMA's final administrative determination of February 19, 2013, was neither plainly erroneous nor inconsistent with its own regulations. (J.A. 220-25). These regulations provide, in relevant part, that "[a] provider who has licenses to practice in two or more jurisdictions and has one or more license(s) suspended or revoked will also be terminated as a [TRICARE] provider," and "shall remain terminated from [TRICARE] until the jurisdiction(s) suspending or revoking the provider's license(s) to practice restores it or removes the impediment to restoration." 32 C.F.R. § 199.9(g)(2)(i).

With respect to the claims against Health Net, the district court held that the Supreme Court has refused to hold private entities liable for alleged Constitutional violations under the implied Constitutional right of action against federal officers recognized in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). (J.A. 213-15). The district court also held that Health Net's termination of Dr. Taylor under the provider agreement and related conduct was essentially a contractual issue, did not constitute "substantial

6

aggravating circumstances," and was therefore not actionable under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq. (J.A. 215-20). From this judgment, Dr. Taylor appealed. (J.A. 227).

## SUMMARY OF ARGUMENT

1.  The district court properly deferred to the TRICARE Management Activity's ("TMA") interpretation of its own regulations and found TMA's decision upholding Dr. Taylor's termination as an authorized TRICARE provider not to be arbitrary, capricious, or contrary to law.  It is undisputed that Dr. Taylor's New York medical license was revoked in 1993, and, while Dr. Taylor is currently licensed in North Carolina, TMA's regulations explicitly provide that "[a] provider who has licenses to practice in two or more jurisdictions and has one or more license(s) suspended or revoked will also be terminated as a [TRICARE] provider."  32 C.F.R. § 199.9(g)(2)(i).

2.  The district court correctly dismissed Dr. Taylor's claims under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA").  First, Dr. Taylor failed to allege any unfair or deceptive practice.  Where, as here, a UDTPA claim is fundamentally premised on a breach of contract, a plaintiff must allege "substantial aggravating circumstances" to sustain the claim.  Health Net's termination of Dr. Taylor (which the TRICARE regulations required) and Health Net's delivery of letters to patients indicating its belief that Dr. Taylor may have been overpaid do not constitute such "substantial aggravating circumstances."  Second, Dr. Taylor did not allege any conduct "in or affecting commerce" or that harmed consumers.

8

Moreover, the UDTPA expressly excludes from its scope "services rendered by a member of a learned profession," including medical services such as those Dr. Taylor performs. Finally, Dr. Taylor did not allege facts showing that Health Net proximately caused his alleged injuries. Dr. Taylor's loss of his New York medical license, not Health Net's required response to that event, was the cause of any alleged injuries.

3. This Court should reject Dr. Taylor's untimely and unsupported claim that Health Net violated the implied duty of good faith and fair dealing. First, Dr. Taylor never pled such a claim in the second amended complaint or in any other pleading before the district court. This claim is therefore both waived and not preserved for appellate review. In any event, Dr. Taylor admits that the implied duty is only breached when a party injures the right of the other to receive the benefits of the agreement. Dr. Taylor fails to allege any facts showing how Health Net's required termination of the contract denied him the benefit of the contract.

4. The district court correctly rejected Dr. Taylor's due process claims. Although Dr. Taylor does not specify whether he is alleging violations of substantive or procedural due process, he fails to state a claim under either protection. First, Plaintiff's due process cause of action is essentially a claim under <u>Bivens</u>, 403 U.S. at 397. Although the Supreme Court has

9

recognized an implied Constitutional cause of action against federal officers under Bivens, the Supreme Court has expressly refused to extend such liability to private entities such as Health Net. Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 71 (2001) ("Malesko"). Extending such a cause of action against Health Net is particularly inappropriate where, as here, there is an extensive federal scheme that was fully utilized to address the complaints Dr. Taylor raised. Moreover, only the deprivation of a "fundamental right"—which requires showing "egregious conduct"—can rise to the level of a substantive due process violation. Dr. Taylor has not identified any fundamental right or alleged any "egregious conduct" necessary to support such a claim.

Second, Dr. Taylor's procedural due process claim fails because Dr. Taylor has not identified any property or liberty interest protected by the Constitution that Health Net deprived him of without due process of law. Moreover, as with any purported substantive due process claim, the Supreme Court has refused to recognize an implied Constitutional cause of action against private entities such as Health Net. In any event, Dr. Taylor has not shown that the extensive TRICARE appeals process that he utilized failed to provide him with adequate procedural due process.

10

5.   The  district  court  did  not  abuse  its  discretion  in exempting  the  United  States  from  discovery  in  accordance  with the  well-established  rule  that  "the  focal  point  for  judicial review  [under  the  APA]  should  be  the  administrative  record already  in  existence,  not  some  new  record  made  initially  in  the reviewing  court."   Camp v. Pitts, 411 U.S. 138, 142 (1973).

ARGUMENT

I. THE AGENCY'S DECISION TO UPHOLD HEALTH NET'S EXCLUSION OF DR. TAYLOR FROM THE TRICARE PROGRAM IS REASONABLE AND CONSISTENT WITH ITS REGULATIONS.

A.    Standard of Review.

This Court reviews the district court's order of dismissal de novo. Marshall v. Cuomo, 192 F.3d 473, 478 (4th Cir. 1999). This Court's review of the underlying administrative decision to terminate Dr. Taylor's status as a TRICARE authorized health care provider, however, is conducted pursuant to the Administrative Procedure Act ("APA"). Id. The APA provides, in relevant part, that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." 5 U.S.C. § 706(2)(A). In determining whether agency action violates the APA, the judiciary "perform[s] only the limited, albeit important, task of reviewing agency action to determine whether the agency conformed with controlling statutes, and whether the agency has committed a clear error of judgment." Maryland Dep't of Human Res. v. USDA, 976 F.2d 1462, 1475 (4th Cir. 1992) (internal quotation marks and citations omitted). "[T]he ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971).

12

Under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984), "[t]he power of an administrative agency to administer a congressionally created program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." Additionally, the agency's interpretation of its own regulation is "controlling unless [it is] plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461 (1997). "[A]n agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail." Decker v. Nw. Envtl. Def. Ctr., 133 S. Ct. 1326, 1337 (2013). The reviewing court will therefore defer to an agency's reasonable interpretation of the statute and regulations it administers, whether that interpretation arises through formal rulemaking or the administrative adjudication process. Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md., 268 F.3d 255, 267 (4th Cir. 2001).

B.    Discussion of Issue.

In the administrative determination which Dr. Taylor now appeals, TRICARE Management Activity ("TMA") upheld Health Net's decision to terminate Dr. Taylor as an authorized TRICARE provider on the basis of 32 C.F.R. § 199.9(g)(2)(i) and the undisputed fact that Dr. Taylor's New York medical license had been previously revoked in 1993 due to disciplinary action, but

13

made the effective date of the termination prospective rather than retroactive pursuant to 32 C.F.R. § 199.9(g)(2)(ii). (J.A. 162-69). Dr. Taylor challenges the agency's reasonable interpretation of its own regulations requiring that he be terminated as a TRICARE provider on the basis of his revoked New York license. (Brief at 21-23).

No statute controls the minimum qualifications for participation in the TRICARE program as an authorized provider. The only statute referenced by Dr. Taylor in the course of this litigation, 10 U.S.C. § 1094(a), applies only to health care providers "under the jurisdiction of the Secretary of a military department;" that is, uniformed and civilian physicians directly employed by the military to staff base hospitals and clinics,[5] and not private practitioners (like Dr. Taylor) who participate in the TRICARE network by entering into a contractual relationship with a Managed Care Support Contractor (like Health Net) which allows them to obtain reimbursement for eligible

---

[5] See also 10 U.S.C. § 1094(b) ("The commanding officer of each health care facility of the Department of Defense shall ensure [that the licensing requirements of this section are met].") (emphasis added); § 1094(d) (carving out an exemption for certain health care providers who are "member[s] of the armed forces, civilian employee[s] of the Department of Defense, personal services contractor[s] under section 1091 of this title" and whose "practice is within the scope of the[ir] authorized Federal duties.").

14

medical services provided to covered beneficiaries.[6] Furthermore, section 1094(a)(1) states only that a physician may not provide health care "unless the person has a current [unrestricted] license to provide such care," but does not by its terms exclude the possibility that other requirements may be imposed.

By contrast, the organic statutes creating the TRICARE program confer broad discretion to the administrative agency by granting to the Secretary of Defense the "responsibility for administering the TRICARE program and making any decision affecting such program." 10 U.S.C. § 1073(a)(2). Pursuant to this delegated authority, the Department of Defense promulgated regulations governing the administration of the TRICARE program which are codified in 32 C.F.R. Part 199.

Title 32, C.F.R. § 199.6 sets forth general qualifications a physician must possess in order to qualify as an authorized TRICARE provider. In particular, individual (non-institutional) health care providers must be "currently licensed to render professional health care services in each state in which the individual renders services" at the "full clinical practice level." 32 C.F.R. § 199.6(c)(2). Dr. Taylor meets this

---

[6] See 10 U.S.C. § 1097; 32 C.F.R. § 199.17(p)(1) ("Providers in the [TRICARE] preferred provider network are not employees or agents of the Department of Defense or the United States Government.").

baseline criterion because he possesses an unrestricted North Carolina medical license, the only state in which he was providing services. (J.A. 187.) However, the same regulatory provision elsewhere states that "[r]egardless of any provision in this section, a provider who is suspended, excluded, or terminated under § 199.9 of this part is specifically excluded as an authorized [TRICARE] provider." Id. § 199.6(a)(15).

In turn, 32 C.F.R. § 199.9(g)(2) provides that "the following guidelines control the termination of authorized [TRICARE] provider status for a provider whose license to practice . . . has been temporarily or permanently suspended or revoked by the jurisdiction issuing the license." Specifically as it applies to this case, the regulation provides:

> Termination of the provider under [TRICARE] shall continue even if the provider obtains a license to practice in a second jurisdiction during the period of suspension or revocation of the provider's license by the original licensing jurisdiction. A provider who has licenses to practice in two or more jurisdictions and has one or more license(s) suspended or revoked will also be terminated as a [TRICARE] provider.

Id. § 199.9(g)(2)(i) (emphasis added). These regulations unambiguously establish the controlling principle that a provider who has a medical license suspended or revoked in *any jurisdiction* will be ineligible to participate in the TRICARE network—even in a jurisdiction in which the provider's license remains valid—during the entire effective period of the

suspension or revocation. Furthermore, "providers shall remain terminated from [TRICARE] until the jurisdiction(s) suspending or revoking the provider's license(s) to practice restores it or removes the impediment to restoration." Id. § 199.9(g)(2)(i)(A). Thus, a physician who suffers an adverse licensing action in one jurisdiction will be excluded from the TRICARE program even if he wants to practice in a second jurisdiction in which his license remains valid or in which he is thereafter able to secure a full and unrestricted license, unless and until the first jurisdiction removes the cloud from the physician's record.

Dr. Taylor has, at various points in his career, been licensed to practice medicine in California, New York, and North Carolina. (J.A. 186-87). In 1986, Dr. Taylor's California license was suspended, and other professional sanctions were imposed, pursuant to a stipulated settlement of a professional disciplinary action against him. (J.A. 186). As a direct result of the California disciplinary action, Dr. Taylor's North Carolina license was revoked in 1987 and his New York license was revoked in 1993. (J.A. 186). By 1996, Dr. Taylor's North Carolina license was restored to a full and unrestricted practice level, and in 2004 he was first approved as an authorized TRICARE provider practicing in North Carolina. (J.A. 174, 187). However, it is undisputed that New York has not

restored Dr. Taylor's medical license or removed whatever impediments remain to it being restored. (J.A. 167). Thus, Dr. Taylor falls squarely within the regulatory requirement that he be excluded as an authorized TRICARE provider pursuant to 32 C.F.R. §§ 199.9(g)(2)(i) and 199.6(a)(15), and his termination from the program was proper. This is true even though Dr. Taylor was not officially terminated until 2013—twenty years after his New York license revocation in 1993—because the regulation specifically contemplates termination from the program not only in cases where a physician ceases to meet the qualifications to be an authorized provider due to a license suspension or revocation that occurs while currently participating in the TRICARE program, but also at any time during the physician's participation where "it is discovered that a provider fails to meet requirements under this part to be an authorized [TRICARE] provider." 32 C.F.R. § 199.9(a)(2).

In his opening brief, Dr. Taylor argues in vain for a contrary result on the grounds that he was approved to be an authorized TRICARE provider in 2004 after fully disclosing his New York license revocation, and citing Thomas Jefferson University v. Shalala, 512 U.S. 504 (1994), to suggest that TMA's interpretation of the regulatory requirements has been inconsistent and is therefore "entitled to considerably less deference than a consistently held agency view." Id. at 515

18

(internal quotation marks and citations omitted). However, TMA —the federal agency charged with administering the TRICARE program—was never required to pass on the issue of Dr. Taylor's eligibility to participate in TRICARE in 2004 (or at any time prior to 2011, when Health Net first took action to terminate him). Thus, the agency has only ever taken one position on the interpretation of this regulation, and that position is one that unequivocally supports Health Net's disqualification decision,[7] not one that in any way endorses the decision of a Managed Care Support Contractor prior to Health Net initially to admit Dr. Taylor as an authorized provider. Furthermore, as the district court observed in footnote 5 of its final order, that contrary initial decision, whether made by mistake or oversight, cannot be binding on the government through principles of estoppel or otherwise. (J.A. 224 (citing Volvo Trucks of N. Am., Inc. v. United States, 367 F.3d 204, 211-12 (4th Cir. 2004)).)

Similarly unavailing is Dr. Taylor's argument that a plain reading of the regulation supports his interpretation that 32 C.F.R. § 199.9(g)(2)'s termination provision applies to providers who suffer the suspension or revocation of a medical

---

[7] Excepting Health Net's original determination to make the termination retroactive to April 1, 2004, which the agency modified to be prospective in application pursuant to 32 C.F.R. § 199.9(g)(2)(ii). (J.A. 204-05).

license only *after* becoming or *while* serving as authorized TRICARE providers. The bracketed operative phrases on which Dr. Taylor's argument entirely rests— "while they are providers" and "after becoming a provider" (Brief at 16, 22)—are found nowhere in the regulation.

What the plain language of 32 C.F.R. § 199.9(g)(2)(i) says is that a physician who is licensed in multiple jurisdictions and "has one or more license(s) suspended or revoked" will be terminated from TRICARE. This provision is not limited just to the discrete and temporally isolated action or decision of the state licensing authority in imposing the sanction (which in Dr. Taylor's case occurred in 1993), but is also broad enough to account for the fact that the resulting sanction is something which persists over time; i.e., for the duration of the suspension or perhaps indefinitely in the case of a revocation. Thus, the operative question is purely one of whether Dr. Taylor "has" a revoked status in one or more jurisdictions, which here is undisputed, in which case his termination from the program is required by the regulation.

This conclusion, which the agency reached by interpreting its own regulation in furtherance of a program it administers, is manifestly reasonable, and therefore entitled to deference even to the extent the regulations may found to be ambiguous. Accordingly, the judgment of the district court dismissing

20

Dr. Taylor's Administrative Procedure Act claim against the United States was not clearly erroneous and should be affirmed.

II. THE DISTRICT COURT CORRECTLY DISMISSED THE CLAIMS AGAINST HEALTH NET WITH PREJUDICE.

A.    Standard of Review

This Court reviews de novo a dismissal for failure to state a claim under Rule 12(b)(6). Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009). The purpose of Rule 12(b)(6) is to eliminate claims that are factually or legally insufficient. Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive, a claim must have "facial plausibility," which requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. This standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Courts must therefore disregard "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[, . . .] unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd., 591 F.3d at 255. Dr. Taylor's complaint fails to state a claim.

21

B.  Discussion of Issue.

1.  The District Court Correctly Held that Dr. Taylor
Failed to State a Claim Under the North Carolina
Unfair and Deceptive Trade Practices Act.

Although never set forth as a separate cause of action in the Second Amended Complaint, Dr. Taylor summarily alleges that Health Net's actions violate North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq. ("UDTPA"). (See J.A. 176 (Second Amended Complaint ¶ 17); see also Brief at 13-21.)  To state a prima facie UDTPA case, a plaintiff must show: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff."  Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); McLamb v. T.P. Inc., 173 N.C. App. 586, 593, 619 S.E.2d 577, 582 (2005).  Dr. Taylor failed to plead facts necessary to support any of these elements.

a. Dr. Taylor Failed to Plead Any Unfair or
Deceptive Trade Practice or Substantial
Aggravating Circumstances.

The district court correctly found that Dr. Taylor did not plead any unfair or deceptive trade practice or "substantial aggravating circumstances" necessary to state a claim under the UDTPA.  (J.A. 215-20).  "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially

22

injurious to consumers." Carcano v. JBSS, LLC, 200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (2009) (citations omitted). "A practice is . . . deceptive if it has a tendency to deceive." Dalton, 353 N.C. at 656, 548 S.E.2d at 711. For any claim under the UDPTA, the plaintiff must also allege "some type of egregious or aggravating circumstances." Dalton, 353 N.C. at 657, 548 S.E.2d at 711. Where, as here, a UDPTA claim is fundamentally premised on a breach of contract, "a plaintiff must show substantial aggravating circumstances attending the breach to recover under the [UDTPA]." Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989) (emphasis added). Dr. Taylor has not alleged facts that meet this stringent standard.

Dr. Taylor's primary allegation is that Health Net terminated its contract with Dr. Taylor to provide TRICARE services. As the district court correctly found—and Dr. Taylor has not disputed—Dr. Taylor's "relationship with Health Net was contractual in nature." (See J.A. 217-18; J.A. 202 n.3 & 203 n.4 (explaining that "a provider who wishes to become a 'network provider with a TRICARE contractor must enter into an agreement/contract with a TRICARE contractor"); J.A. 184 (noting in "Credentialing for TRICARE Network Providers" overview that providers must, among other things, agree to conditions of participation per the network agreement in order to qualify for

23

participation in Health Net's provider network and referencing obligations under a "Professional Provider Agreement")). See also 32 C.F.R. 199.17(q)(5) ("The provider must sign a preferred provider network agreement covering all applicable requirements. Such agreements will be for a duration of one year, are renewable, and may be canceled by the provider or the MTF Commander (or other authorized official) upon appropriate notice to the other party.").

Thus, even if Health Net terminated Dr. Taylor improperly—which it did not, see supra Section I.B—Dr. Taylor's claim fails because "North Carolina courts have repeatedly held that 'a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UDTPA.]'" PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009) (quoting Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (collecting cases)); Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 61-62, 418 S.E.2d 694, 700 (1992) (same). Indeed, the district court correctly explained that, even if the initial agency decision's retroactive application of the termination (which was modified in the final agency decision to be prospective) was incorrect, "Health Net's error in this regard . . . does not alter the contractual nature of the relationship between [Dr. Taylor] and Health Net, nor does it serve to transform Health Net's exercise

24

of contractual rights and remedies into an unfair trade practice." (J.A. 219-20 (Opinion) (citing cases)). <u>Cf.</u> <u>Canady v. Crestar Mortg. Corp.</u>, 109 F.3d 969, 976 (4th Cir. 1997) (holding that defendant's "legitimate, albeit incorrect" assertion of rights did not violate UDTPA).[8]

Dr. Taylor correctly concedes that it is "rare that the exercise of a contractual right" will create a UDTPA claim, yet wrongly insists that this case presents such a rare occasion. (Brief at 18-19 (citing <u>S. Atl. Ltd. P'ship of Tenn., LP v. Riese</u>, 284 F.3d 518 (4th Cir. 2002))). Dr. Taylor's reliance on <u>Riese</u> is misplaced. In <u>Riese</u>, this Court held that "deliberately withholding" information and removing partners from a company without providing any compensation for their ownership interest violated the UDTPA as an "inequitable assertion of power or position." <u>Id.</u> at 539-40. Neither situation is present here. Dr. Taylor has not alleged that Health Net deliberately withheld any information from him. Nor has Dr. Taylor alleged that Health Net actually withheld any compensation for services rendered during performance of the TRICARE contract. Far from being an "inequitable assertion of power," the TRICARE regulations required Health Net to terminate

---

[8] Dr. Taylor's assertion that his termination should have been prospective rather than retroactive (Brief at 24-25) is moot given that the final agency decision made clear that the termination applied prospectively. (J.A. 162-69).

Dr. Taylor because his New York medical license had been revoked. See 32 C.F.R. § 199.9; see also supra Section I.B. This case therefore does not present the "rare" situation where the exercise of a contractual right is so "egregious and aggravating" to state a claim under the UDTPA.

Dr. Taylor's reliance on Defeat the Beat, Inc. v. Underwriters at Lloyd's London, 194 N.C. App. 108, 669 S.E.2d 48 (2008) for the proposition that an UDTPA action can exist independently of a breach of contract action is also misplaced. Health Net does not dispute that the two causes of action can coexist. Rather, Dr. Taylor's claim fails, in part, because he has not alleged any "substantial aggravating circumstances attending the breach" necessary to state a UDTPA claim that is fundamentally premised on a contractual relationship. Bartolomeo, 889 F.2d at 535. Defeat the Beat does not stand for a contrary proposition. In fact, that case held there was no violation of the UDTPA even though defendants had misrepresented the scope of insurance coverage under the contract. Defeat the Beat, Inc., 194 N.C. App. at 119, 669 S.E.2d at 55. Thus, even if Health Net had misrepresented Dr. Taylor's ability to remain a TRICARE provider—which it did not—Dr. Taylor's UDTPA claim would still fail.

Nor does Dr. Taylor's related claim that Health Net sent letters to Dr. Taylor's patients constitute the type of

26

"substantial aggravating circumstances" necessary to state a UDTPA claim. In their entirety, these letters stated:

> Dear Beneficiary:
>
> Between [Date] and [Date], we made payments to the provider referenced on the attached list for services rendered to the patient above. Upon review, it has been determined that an overpayment in the amount of [$XXX.xx] was made to this provider.
>
> If the provider contacts you for reimbursement, please contact customer services toll-free at 1-877-TRICARE (1-877-874-2273) or visit our website at www.myTRICARE.com
>
> Sincerely,
>
> TRICARE Finance

(J.A. 182). Contrary to Dr. Taylor's assertions, the letters said nothing about Dr. Taylor's termination from TRICARE, did not state that Dr. Taylor might attempt to <u>improperly</u> collect payments from patients directly, and did not place any blame for potential overpayments on Dr. Taylor. (See Brief at 19-20; J.A. 176 (Second Amended Complaint ¶¶ 16-17)). Rather, the letters simply stated that should any reimbursement issue arise, patients should contact TRICARE for further assistance. Indeed, Dr. Taylor implicitly concedes that the letters do not contain any defamatory statements. (See Brief at 25 n.11 ("Plaintiff did not intend to state a separate claim [for defamation]")). On their face, the letters therefore do not constitute conduct that is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." <u>Carcano</u>, 200 N.C. App.

27

at 172, 684 S.E.2d at 50. Nor has Dr. Taylor alleged that his termination or these letters violated any "established public policy." Id.

Dr. Taylor's other conclusory allegations—that Health Net at one point sought to collect previous overpayments (J.A. 175 (Second Amended Complaint ¶ 13)) and that Health Net somehow "induced" Dr. Taylor to live in North Carolina (Brief at 20)—also do not constitute "substantial aggravating circumstances." Dr. Taylor acknowledges that Health Net never actually collected any overpayments and ceased such efforts once the final agency determination clarified that termination was to apply prospectively. (Brief at 4 (admitting that, following the February 13, 2013 Final Determination, "defendants stopped saying that plaintiff owed them back the money he had earned")). Moreover, this Court has already found no UDTPA violation in similar circumstances when a plaintiff alleged he was "deceived" about the status of his relationship with the defendant leading up to termination. See Bartolomeo, 889 F.2d at 534-35 (finding no UDTPA violation where plaintiff claimed he was "deceived" about the continued relationship between the parties because defendant complied with contractual termination provisions and plaintiff could not show how he was injured by alleged deception).

Thus, as the district court correctly found, the conduct

28

Dr. Taylor alleges "amount[s] to a dispute over the parties' respective rights and remedies under the provider agreement [between Health Net and Dr. Taylor]. As such they do not form the basis for a UDTPA claim." (J.A. 218). See PCS Phosphate Co., 559 F.3d at 224 (threats to abandon access to mine and thereby "willfully breach" contract were not "substantial aggravating circumstances" because threats simply reflected defendant's belief it had ability to terminate contract and was thus "nothing more" than a dispute over the enforceability of the agreement); see also Deltacom, Inc. v. Budget Telecom, Inc., No. 5:10-CV-38-FL, 2011 WL 2036676, at *4 (E.D.N.C. May 22, 2011) (dismissing UDTPA counterclaim for lack of "substantial aggravating circumstances" because plaintiff's allegedly defamatory statements to defendant's subagents that "defendant was not meeting its requirements under the contract and would be terminated [] implicate no more than plaintiffs' understanding of defendant's alleged breach"). "Given the contractual center of this dispute, plaintiff['s] [UDTPA] claims are out of place" and must be dismissed. Broussard, 155 F.3d at 347.

> b. Dr. Taylor Has Not Alleged that Health Net's Actions Harmed Consumers or Were Otherwise "in or Affecting Commerce".

Second, Dr. Taylor alleges no facts to show that Health Net's conduct was "in or affecting commerce." The scope of "commerce" under the UDTPA does not include all wrongs that

occur in a business setting.  HAJMM Co. v. House of Raeford Farms, Inc., 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991). Rather, the statute's main purpose is to protect the consuming public from unfair business practices.  Food Lion, Inc. v. Cap. Cities/ABC, Inc., 194 F.3d 505, 519-20 (4th Cir. 1999).  Thus, in order to "affect[] commerce," the allegedly deceptive acts must have a tangible effect on the marketplace.  Id. at 520.  In other words, "[t]he proper inquiry is not whether a contractual relationship existed between the parties, but rather whether the defendants' allegedly deceptive acts affected commerce." Durling v. King, 146 N.C. App. 483, 488-89, 554 S.E.2d 1, 4 (2001) (quotation omitted).

Dr. Taylor's UPDTA claim fails because he has not alleged that Health Net's actions had an impact on the marketplace or otherwise injured consumers.  See Food Lion, 194 F.3d at 520 (holding no UDTPA violation where misrepresentations from one company to another "did not harm the consuming public"). Moreover, Dr. Taylor has not alleged any facts showing that his termination had an actual impact beyond the relationship between Health Net and Dr. Taylor.  See Durling, 146 N.C. App. at 489, 554 S.E.2d at 4 (holding no UDTPA violation where act of withholding commissions breached contract but had no impact outside relationship between the parties).  Thus, Dr. Taylor's

UDTPA claim was properly dismissed because he cannot satisfy the "in or affecting commerce" requirement.[9]

### c. Dr. Taylor Has Not Alleged Enough to Show that Health Net Proximately Caused His Alleged Injuries.

Finally, the district court properly dismissed Dr. Taylor's UDTPA claim because he did not plead that Health Net proximately caused his alleged injuries. The direct and proximate cause of Dr. Taylor's alleged injuries is the revocation of his New York license to practice medicine—not Health Net's required response to that event. Dr. Taylor cannot be an authorized TRICARE provider unless and until his New York license is restored. (J.A. 51). The TRICARE regulations required terminating Dr. Taylor because he failed to meet the authorized provider qualifications. See 32 C.F.R. § 199.9. Dr. Taylor's injury is therefore entirely self-inflicted and cannot support a claim against Health Net. See Bartolomeo, 889 F.2d at 535 (affirming dismissal of UDTPA claim where allegations insufficient to establish actual injury and proximate causation). Likewise, any argument that Dr. Taylor was injured based on his reliance on

---

[9] Dr. Taylor's UDPTA claim also fails because "commerce" under the UDTPA expressly excludes "professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b). Medical services such as those Dr. Taylor provides are exactly the type of services excluded by this language and, thus, the dispute between Health Net and Dr. Taylor over the provision of such services is not "in or affecting commerce."

being an authorized TRICARE provider should be rejected because Dr. Taylor not only failed to allege facts showing such reliance, but also why such reliance was reasonable.  See Kelly v. Georgia-Pacific LLC, 671 F. Supp. 2d 785, 799 (E.D.N.C. 2009) (dismissing UDTPA claim where plaintiff failed to allege actual reliance on alleged misrepresentation as necessary to establish proximate causation of damages).[10]

### 2. Dr. Taylor Cannot State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

For the first time on appeal, Dr. Taylor asserts that Health Net violated the implied duty of good faith and fair dealing.  (Brief at 23-24).  The Court should reject Dr. Taylor's unsupported and untimely claim.

First, Dr. Taylor never pled a claim for breach of the implied covenant of good faith and fair dealing or any facts to support such a claim in the Second Amended Complaint.  Claims never raised and never supported with facts in a complaint must be rejected outright.  See Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009)

---

[10] Dr. Taylor also fails to allege any cognizable injury stemming from the initial determination regarding his termination.  To the contrary, Dr. Taylor acknowledges that Health Net never actually collected any overpayments and ceased such efforts once the final agency determination clarified that termination was to apply prospectively.  (Brief at 4 (admitting that, following the February 13, 2013, Final Determination, "defendants stopped saying that plaintiff owed them back the money he had earned")).

(refusing to consider claim that plaintiff did not plead in complaint).

Second, this new cause of action cannot be considered on appeal because it was not raised before the district court. See, e.g., Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993) ("As this court has repeatedly held, issues raised for the first time on appeal generally will not be considered.").

Third, even if not waived, Dr. Taylor fails to plead facts to support this cause of action as a matter of law. As Dr. Taylor admits, the implied duty of good faith exists only where a party to a contract acts to "injure[] the right of the other to receive the benefits of the agreement." (Brief at 23 (citing Williams v. Craft Dev., LLC, 199 N.C. App. 500, 682 S.E.2d 719 (2009))). Dr. Taylor makes a conclusory statement that he was "extorted" by Health Net (Brief at 24), but provides no explanation how Health Net's exercise of its contractual right to terminate Dr. Taylor "injured" his right to any benefits of the contract. Nor can Dr. Taylor's claims that Health Net tried to collect past overpayments—which Dr. Taylor concedes were never actually collected—establish any breach of the covenant. (Brief at 4 (admitting that, following the February 13, 2013, Final Determination, "defendants stopped saying that plaintiff owed them back the money he had earned")). Indeed, Plaintiff never alleges that Health Net refused to compensate him for

33

services already rendered during performance of the TRICARE contract. Thus, Health Net's termination ended the contract, but it did not injure Dr. Taylor's rights <u>during the performance</u> of the agreement. This Court should therefore reject Dr. Taylor's untimely attempt to inject for the first time on appeal a new claim for breach of the implied duty of good faith and fair dealing.

### 3. <u>Dr. Taylor Failed to State a Due Process Claim Against Health Net</u>.

The district court correctly held that Dr. Taylor failed to state a due process claim against Health Net. Charitably construed, Dr. Taylor claims that termination of his "right to receive TRICARE referrals" violated his Fifth Amendment due process rights. (Brief at 26-27). Although Dr. Taylor did not specify whether he intended to pursue a substantive or procedural due process claim, both fail as a matter of law.[11]

---

[11] Dr. Taylor's opening brief also confusingly links his due process claim against Health Net with alleged violations of the Administrative Procedures Act, 5 U.S.C. § 706 ("APA"). To the extent Dr. Taylor suggests that a private entity such as Health Net is subject to the APA, such claim should be rejected. <u>See Reg'l Mgmt. Corp. v. Legal Servs. Corp.</u>, 186 F.3d 457, 462 (4th Cir. 1999) ("[T]he APA's judicial review provisions apply only to action by a federal agency."). In any event, Dr. Taylor has not stated a claim under the APA. <u>See</u> <u>supra</u> Section I.B.

a. Dr. Taylor Failed to State a Substantive Due Process Claim.

Although not styled as such, Dr. Taylor's substantive due process cause of action is essentially a claim under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). In Bivens, the Supreme Court recognized an implied cause of action against federal officers who violate the Constitution. However, the Supreme Court has expressly refused to extend such liability to private entities such as Health Net. Malesko, 534 U.S. at 71.[12] Moreover, the Supreme Court has emphasized that Bivens liability is particularly inappropriate where, as here, there is an extensive federal scheme that was fully utilized to address the complaints Dr. Taylor raised. In any event, substantive due process only protects against a violation of a "fundamental right" that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Hawkins v. Freeman, 195 F.3d 732, 738 (4th Cir. 1999). Dr. Taylor has not alleged facts that meet this stringent standard. His claims must therefore be dismissed.

---

[12] Likewise, to the extent Dr. Taylor's complaint may be construed to state a Bivens-type due process claim against the United States, the Supreme Court has expressly declined to extend the Bivens remedy to the federal government and its agencies. See Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 484-86 (1994). The only waiver of sovereign immunity applicable to Dr. Taylor's claims against the United States is provided by the APA, discussed supra Section I.B.

First, the Supreme Court has expressly refused to impose Bivens liability on private entities allegedly acting under color of law. Malesko, 534 U.S. at 71; see also Gantt v. Sec., USA, Inc., 356 F.3d 547, 552 (4th Cir. 2004) (affirming dismissal of Constitutional claims against private entity that allegedly "acted as an agent or instrumentality of the United States government"); James v. Servicesource, Inc., 555 F. Supp. 2d 628, 638-39 (E.D. Va. 2008) ("Plaintiff has no right of action under Bivens against a private entity . . . even if the private entity engages in alleged constitutional violations while acting under color of federal law."). Dr. Taylor incorrectly argues that Malesko is distinguishable because that case involved derivative liability against a corporation and Dr. Taylor alleges here that Health Net is "direct[ly] liabl[e] based upon its 'corporate policy to do harm to plaintiff.'" (Brief at 27). As the district court correctly held, however, Malesko forecloses a Bivens action against a private corporation regardless of the theory of liability. (J.A. 214 (quoting Malesko, 534 U.S. at 70-71 ("The purpose of Bivens is to deter federal officers from committing constitutional violations . . . no matter that they . . . are acting pursuant to an entity's policy[.]"))).

Here, the district court correctly found that Health Net is a private entity. (J.A. 214 (Opinion); see also J.A. 171

(Second Amended Complaint ¶ 3); J.A. 3, DE # 12 (Health Net Corporate Disclosure Statement)). Therefore, even if Dr. Taylor had offered any facts to support his conclusory assertion that "HealthNet [sic] is a state actor or can fairly be described as one for the purposes of Fifth Amendment analysis" (J.A. 171 (Second Amended Complaint ¶ 3))—and he has not—Dr. Taylor's Bivens claim is foreclosed and must be dismissed.[13]

Second, Dr. Taylor's due process claim fails because the Supreme Court has refused to extend Bivens liability where, as here, an extensive remedial scheme exists to address allegedly improper terminations—even if such mechanisms fail to provide "complete relief." See Schweiker v. Chilicky, 487 U.S. 412, 423-25 (1988) (declining to recognize Bivens remedy for social security beneficiaries because of "elaborate remedial scheme" to address improper benefits termination even though such scheme failed to provide "complete relief") (quoting Bush v. Lucas, 462 U.S. 367, 388 (1983)). Likewise, the Supreme Court has refused

---

[13] Although the district court assumed without deciding that Health Net could "fairly be described as a state actor" (J.A. 214) for purposes of the Bivens analysis despite being a private entity, Dr. Taylor has offered no facts in support of this conclusory assertion. If anything, Dr. Taylor's contradictory allegation that Health Net "functions as a free agent, totally beyond government control" undermines this claim. Dr. Taylor's allegation is nothing more than an unsupported legal conclusion that this Court should disregard. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

to permit a Bivens action where the alleged conduct can be addressed through state tort law.  See Minneci v. Pollard, 132 S. Ct. 617, 623, 626 (2012) (declining to permit Bivens action against employees of private prison contractor because existence of state law remedies "constitute[] a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages").

Here, TRICARE contains an extensive remedial scheme, which Dr. Taylor utilized, to address termination decisions.  See 32 C.F.R. §§ 199.9(h) & 199.10 (governing notice and appeal provisions for aggrieved providers).  Health Net provided Dr. Taylor with notice of the facts and circumstances supporting termination, the operative regulations, and information regarding reinstatement and the appeals process, as required under 32 C.F.R. §§ 199.9(h)(3)-(4).  (J.A. 51-53 (May 18, 2011 Initial Determination (referencing prior April 7, 2011, notice of proposed action)).  Dr. Taylor concedes that he exhausted this detailed appeals process.  (J.A. 176-77 (Second Amended Complaint ¶ 18)).  The Constitution does not require more.  See Schweiker, 487 U.S. at 423-25.

Finally, Dr. Taylor's due process claim fails because he has not pled any violation of a fundamental right protected by the Constitution or any "outrageous conduct" necessary to state a substantive due process claim.  "Unlike rights [that are]

38

subject to procedural due process protection, which arise from sources other than the Constitution, substantive due process rights arise solely from the Constitution." Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1142 n.10 (4th Cir. 1990).

Here, Dr. Taylor's purported interest in "receiving TRICARE referrals" and any money he would make from providing medical services to TRICARE patients (see Brief at 25-26), is not a fundamental right that is "deeply rooted in this Nation's history and tradition, . . . and implicit in the concept of ordered liberty." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotations omitted). Rather, as the district court correctly found, Dr. Taylor's authorized provider status arises from and is governed by the contract between Dr. Taylor and Health Net. (See J.A. 216-18 (Opinion)). Courts consistently hold that contractual rights, as opposed to rights stemming from the Constitution, are not properly the subject of a substantive due process claim. See, e.g., Huang, 902 F.2d at 1142 n.10 (professor's interest in position in university department "is essentially a state law contract right, not a fundamental interest embodied in the Constitution"); Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Huntington, 31 F.3d 1191, 1196 (2d Cir. 1994) ("We do not think, however, that simple, state-law contractual rights, without more, are worthy

of substantive due process protection."); Charles v. Baesler, 910 F.2d 1349, 1353 (6th Cir. 1990) (explaining that "[t]he substantive Due Process Clause is not concerned with the garden variety issues of common law contract" and therefore holding that "we do not believe liberty and justice are threatened, in the constitutional sense, by the failure of the government and its officials to abide by their contract").

Nor has Dr. Taylor pled any conduct that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Hawkins, 195 F.3d at 738. Substantive due process protections are so narrow that they are only violated by "state action . . . so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 827 (4th Cir. 1995) (quotation omitted). Moreover, the conduct alleged "must be 'intended to injure in some way unjustifiable by any government interest.'" Hawkins, 195 F.3d at 742 (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)).

Dr. Taylor's termination from TRICARE does not meet this stringent standard. As the district court correctly found, Dr. Taylor's authorized provider status arises from and is

40

governed by the contract between Health Net and Dr. Taylor. (See J.A. 216-18 (Opinion) and citations therein). Continued status as a TRICARE provider is therefore a contractual right only, not a fundamental right under the Constitution, and cannot form the basis for a substantive due process claim. Huang, 902 F.2d at 1142 n.10; see also Hawkins, 195 F.3d at 747-48.

Moreover, far from being "literally incapable of . . . adequate rectification by any post-deprivation . . . remedies," Sylvia Dev. Corp., 48 F.3d at 827, the TRICARE regulations set forth comprehensive appeal procedures that were utilized to evaluate Dr. Taylor's termination, see 32 C.F.R. § 199.10. The fact that those remedies resulted in a finding that Dr. Taylor was properly terminated as a TRICARE provider does not, in turn, mean that appeal rights were incapable of curing a wrong. Nor has Dr. Taylor alleged that the termination of his authorized provider status was "intended to injure in some way unjustifiable by any government interest." Lewis, 523 U.S. at 849. To the contrary, Health Net is obligated to ensure that the credentials of its network providers meet TRICARE's minimum requirements. (See J.A. 171 (Second Amended Complaint ¶ 3) ("Health Net is subject to and bound by the [TRICARE] regulations."); J.A. 217-18 (district court opinion citing provisions showing Health Net is obligated to ensure providers meet credentialing requirements)).

41

This Court should therefore affirm the district court's well-reasoned dismissal of Dr. Taylor's substantive due process claim because <u>Bivens</u> does not permit such a claim against a private entity like Health Net. Moreover, Dr. Taylor has not identified any fundamental right protected by the Constitution or alleged any "outrageous or egregious" conduct unjustifiable by any legitimate governmental interest.

b. <u>Dr. Taylor Failed to State a Procedural Due Process Claim</u>.

Dr. Taylor's conclusory due process allegations fare no better if construed as a procedural due process claim. As a threshold matter, Dr. Taylor did not dispute in proceedings before the district court that he failed to plead a procedural due process claim against Health Net and thus has waived any such argument on appeal. (<u>See</u> J.A. 6–7 (DE ## 33, 38, & 43)). <u>See</u> <u>Muth</u>, 1 F.3d at 250 ("As this court has repeatedly held, issues raised for the first time on appeal generally will not be considered."). Even if not waived, however, such a claim would fail as a matter of law. A procedural due process claim requires Dr. Taylor to assert: (1) he had a cognizable liberty or property interest; (2) that the interest was deprived through some form of state or governmental action; and (3) that the deprivation occurred without constitutionally adequate

procedures. Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 314 (4th Cir. 2012). Dr. Taylor has not pled any of these elements.

First, Dr. Taylor did not allege any deprivation of a protected liberty interest. The Second Amended Complaint alleges only that Health Net "accused [Dr. Taylor] of fraud" and "foreclosed the economic opportunity that comes with being an authorized TRICARE provider." (J.A. 176 (Second Amended Complaint ¶ 16)). The Court should disregard these conclusory allegations because Dr. Taylor offered no facts to support them. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, fraud claims must be pled with particularity. See Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 781 (4th Cir. 2013) (affirming dismissal where plaintiff's consumer protection statute claim "sound[ed] in fraud" but failed to satisfy "the heightened pleading standards of Federal Rule of Civil Procedure 9(b)"). Dr. Taylor not only fails to plead fraud with particularity, but fails to plead any facts whatsoever.

Even if true, however, "liberty interests are not implicated by harm to reputation alone." Zepp v. Rehrmann, 79 F.3d 381, 388 (4th Cir. 1996) (citing Paul v. Davis, 424 U.S. 693, 712 (1976)). Instead, there must be a public statement or charge that "impl[ies] the existence of serious character

43

defects such as dishonesty or immorality" severe enough to "seriously damage [the plaintiff's] standing and associations in his community or foreclose[] his freedom to take advantage of other employment opportunities." Id. (quotations omitted).

Here, Dr. Taylor has not pled facts to show that Health Net made a public charge that implied dishonesty or immorality.[14] Health Net's letters to Dr. Taylor's patients stating that Health Net believed it had overpaid a provider (J.A. 182-83) are insufficient to implicate a protected liberty interest. Contrary to Dr. Taylor's assertions, the letters said nothing about Dr. Taylor's termination from TRICARE, did not state that Dr. Taylor might attempt to improperly collect payments from patients directly, and did not place any blame for potential overpayments on Dr. Taylor. (See Brief at 19-20; J.A. 176 (Second Amended Complaint ¶¶ 16-17)). Rather, the letters simply stated that should any reimbursement issue arise, patients should contact TRICARE for further assistance. (J.A. 182). Such statements do not implicate a liberty interest. See, e.g., Zepp, 79 F.3d at 388 (affirming that even employer's statements suggesting "incompetence" or "unsatisfactory job

---

[14] Indeed, Dr. Taylor does not challenge the district court's dismissal of his defamation claim and concedes he did not intend to state a separate defamation claim. (See Brief at 25 ("Plaintiff did not intend to state a separate claim [for defamation]")).

44

performance" regarding terminated government employee did not violate protected liberty interest). Moreover, Dr. Taylor does not allege that termination from the TRICARE network effectively barred Dr. Taylor from practicing his chosen trade—nor could he—given that TRICARE beneficiaries are but a tiny fraction of the total number of individuals receiving medical services and that Dr. Taylor's exclusion from the TRICARE network only prevents him from obtaining reimbursement from TRICARE for providing services to TRICARE members and their beneficiaries. His exclusion does not prevent him from treating non-TRICARE patients, nor does it prevent him from treating TRICARE members or their beneficiaries and seeking payment from those individuals or their non-TRICARE insurers. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 575 (1972) ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."); Shirvinski, 673 F.3d at 315-16 (holding no procedural due process violation where government contractor employee was terminated because no showing that skills were "rendered largely unmarketable" due to government action) (internal quotations omitted).

Nor did Dr. Taylor identify a constitutionally protected property interest in his relationship with Health Net. This is because property rights "are created and their dimensions are

45

defined by existing rules or understandings that stem from an independent source such as state law." Tri-Cnty. Paving, Inc. v. Ashe Cnty., 281 F.3d 430, 436 (4th Cir. 2002). However, "[a] mere breach of contractual right is not a deprivation of property without constitutional due process of law." Coastland Corp. v Currituck Cnty., 734 F.2d 175, 178 (4th Cir. 1984). "Otherwise, virtually every controversy involving an alleged breach of contract by a government would be a constitutional case." Id.

As the district court correctly found, Dr. Taylor's "relationship with Health Net was contractual in nature." (See J.A. 217-18; J.A. 202 n.3 & 203 n.4 (explaining that "a provider who wishes to become a 'network provider with a TRICARE contractor must enter into an agreement/contract with a TRICARE contractor"); J.A. 184 (noting in "Credentialing for TRICARE Network Providers" overview that providers must, among other things, agree to conditions of participation per the network agreement in order to qualify for participation in Health Net's provider network and referencing obligations under a "Professional Provider Agreement")). See also 32 C.F.R. 199.17(q)(5) ("The provider must sign a preferred provider network agreement covering all applicable requirements. Such agreements will be for a duration of one year, are renewable, and may be canceled by the provider or the MTF Commander (or

46

other authorized official) upon appropriate notice to the other party."). Dr. Taylor has not refuted or denied that he has such agreement contractual relationship with Health Net and, thus, cannot state a claim for deprivation of a protected property interest. See Coastland, 734 F.2d at 178.

Health Net is aware that this Court has held that a physician has a property right in continued participation in the North Carolina state Medicaid program. See Bowens v. N.C. Dep't of Human Res., 710 F.2d 1015, 1018-19 (4th Cir. 1983). That decision, however, is inapposite here. Bowens involved a claim arising under 42 U.S.C. § 1983 against a state governmental agency responsible for administering regulations promulgated in the North Carolina Administrative Code implementing the state's Medicaid program, which created both procedural and substantive rights with respect to program termination. See id. at 1018. Here, Health Net is a private (not state) actor and Dr. Taylor has not pled a 42 U.S.C. § 1983 claim. Rather, his claim seeking monetary damages based on alleged violations of the Fifth Amendment can only be rooted in the implied right to a cause of action recognized in Bivens. Bivens, however, is a judicially created remedy and more narrow in scope then § 1983. See Holly v. Scott, 434 F.3d 287, 291-92 (4th Cir. 2006) ("There exists ample reason to be even more cautious about imputing liability to private actors under Bivens than under § 1983.")

47

Whereas § 1983 "is a congressional enactment that expressly creates liability" for a wide range of individuals acting under color of law, Bivens "is a device of judicial creation" and "[a]pplication of Bivens to private individuals simply does not find legislative sanction." Id. In other words, courts must be particularly cautious before imposing monetary liability under Bivens even if § 1983 would expressly permit such a money action. Thus, because Dr. Taylor's claim here is premised on Bivens liability, the Bowens decision applying § 1983 is inapposite because the Bowens Court did not face the same considerations militating against imposing monetary liability. Moreover, other circuits that have evaluated property rights under the more analogous federal Medicare statute and regulations have consistently found no property right for physicians in continued participation in a federal government insurance program. See, e.g., Erickson v. United States, 67 F.3d 858, 862 (9th Cir. 1995) (finding no property right in continued participation in Medicare, Medicaid, and other similar programs) (citing Koerpel v. Heckler, 797 F.2d 858, 863-65 (10th Cir. 1986) and Cervoni v. Sec'y of Health, Ed. And Welfare, 581 F.2d 1010, 1018-19 (1st Cir. 1978)). In any event, as the Bowens Court found, and as discussed below, the procedures afforded to Dr. Taylor more than satisfy any procedural due process requirements.

48

Second, Dr. Taylor's procedural due process claim fails because he cannot state a Constitutional claim against a private entity such as Health Net. As discussed <u>supra</u> Section II.B.3.a, the Supreme Court has expressly declined to impose liability for alleged Constitutional torts against private entities. <u>See Malesko</u>, 534 U.S. at 71; <u>see also</u> <u>Gantt</u>, 356 F.3d at 552 (affirming dismissal of Constitutional claims against private entity that allegedly "acted as an agent or instrumentality of the United States government").

Finally, as discussed <u>supra</u> Section II.B.3.a, Dr. Taylor has not alleged that the extensive TRICARE appeals process, which Dr. Taylor concedes he exhausted (J.A. 176-77 (Second Amended Complaint ¶ 18)), failed to provide adequate procedural due process protections. "Procedural due process is simply a guarantee of fair procedures—typically notice and an opportunity to be heard." <u>Mora v. Gaithersburg</u>, 519 F.3d 216, 230 (4th Cir. 2008) (internal quotations omitted). Due process "does not require certain results." <u>Hyatt v. Town of Lake Lure</u>, 314 F. Supp. 2d 562, 579 (W.D.N.C. 2003).

Here, Health Net provided Dr. Taylor with notice of the facts and circumstances supporting termination, the operative regulations, and information regarding reinstatement and the appeals process, as required under 32 C.F.R. §§ 199.9(h)(3)-(4). (J.A. 51-53 (May 18, 2011, Initial Determination)). Dr. Taylor

49

concedes that he exhausted this detailed appeals process. (J.A. 176-77 (Second Amended Complaint ¶ 18)). Procedural due process does not require more. See Sunrise Corp. v. City of Myrtle Beach, 420 F.3d 322, 328 (4th Cir. 2005) (affirming dismissal of due process claim where plaintiffs received several levels of review of adverse government determination); Sylvia Dev. Corp., 48 F.3d at 827 (affirming dismissal of procedural due process claim where plaintiff alleged that defendant's decision was mistaken and lacked evidentiary support).

Thus, regardless of whether Dr. Taylor's conclusory allegations are construed as a substantive or procedural due process claim, the claim fails. The Supreme Court has refused to extend due process liability to private entities such as Health Net. Moreover, Dr. Taylor has not asserted any "fundamental right" or "egregious conduct" (required for a substantive due process claim) or any protected property or liberty right (required for a procedural due process claim) in his continued status as a TRICARE provider. Even if Dr. Taylor were deprived of a cognizable Constitutional right—and he was not—he has not alleged that the extensive TRICARE appeals process, which he exhausted, failed to provide adequate due process protections. This Court should therefore affirm the district court's well-reasoned dismissal of Dr. Taylor's due process claim.

III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY EXEMPTING THE UNITED STATES FROM DISCOVERY.

A.  Standard of Review.

This Court reviews the district court's order exempting the United States from discovery for abuse of discretion. Fort Sumter Tours, Inc. v. Babbitt, 66 F.3d 1324, 1336 (4th Cir. 1995). An abuse of discretion will not be found unless a party has been "substantially prejudiced by the denial of the . . . discovery it seeks." Nicholas v. Wyndham Intern., Inc., 373 F.3d 537, 543 (4th Cir. 2004).

B.  Discussion of Issue.

Dr. Taylor's brief fails to make any showing that he was substantially prejudiced by the district court's order exempting the United States from discovery beyond the certified administrative record. (Brief at 28-29; J.A. 154-56). During the pendency of the motions to dismiss Dr. Taylor's first amended complaint—not the version of the complaint or the round of motions that were ultimately dispositive of this case, and now under appeal—the district court ordered the parties to meet and confer on a discovery plan as provided by Fed. R. Civ. P. 26(f). (J.A. 6, DE #36.) In response to the district court's order, the United States moved for exemption from discovery based on the principle articulated in Camp v. Pitts, 411 U.S. 138 (1973), that "the focal point for judicial review [under the APA] should be the administrative record already in existence,

51

not some new record made initially in the reviewing court." Id. at 142; see also Fort Sumter Tours, 66 F.3d at 1335-36; Fayetteville Area Chamber of Commerce v. Volpe, 515 F.2d 1021, 1024 (4th Cir. 1975). Dr. Taylor opposed the United States' motion on the grounds that he desired to depose the agency decision maker.

In the same order in which the district court denied the United States' initial motion to dismiss, the district court granted the United States' motion for exemption from discovery, noting that Dr. Taylor failed to establish good cause to depart from the presumption against expanding the administrative record because a party is not entitled to discovery about an agency's internal and pre-decisional deliberations. (J.A. 155-56 (citing Fund for Animals v. Williams, 391 F. Supp. 2d 191, 197 (D.D.C. 2005), and Ad Hoc Metals Coal. v. Whitman, 27 F. Supp. 2d 134, 143 (D.D.C. 2002))). Based on the applicable law and the procedural posture of this case at the time the district court's order was entered, this conclusion fell well within the district court's discretion.

In response to the court's order, however, the United States moved for a remand to TMA for further administrative proceedings, which the district court granted on January 18, 2013 (J.A. 157), and which effectively mooted the district court's directive that the agency file the certified

52

administrative record but otherwise exempted the United States from discovery obligations. Upon notification to the district court that a new final agency determination had been rendered (J.A. 158-69), Dr. Taylor was permitted to file a second amended complaint and the parties again moved to dismiss for failure to state a claim. In the final order and judgment now on appeal, the district court determined that the United States' motion to dismiss was dispositive of Dr. Taylor's APA claim in light of the action TMA took on remand to correct the effective date of Dr. Taylor's termination.

Given the procedural posture in which this case concluded, therefore, there is yet another reason why denying Dr. Taylor the opportunity for discovery was not an abuse of discretion. During the pendency of a pre-answer motion to dismiss, "[d]iscovery is only appropriate where there are factual issues raised by" the motion. Jarvis v. Regan, 833 F.2d 149, 155 (9th Cir. 1987). "Where the district court accepts the plaintiff's allegations as true, but concludes that those allegations are insufficient as a matter of law, it is not an abuse of discretion to limit discovery . . . ." Flaim v. Med. Coll. of Ohio, 418 F.3d 629, 643 (6th Cir. 2005). Thus, because United States' motion to dismiss raised no dispute of fact and the district court found Dr. Taylor's second amended complaint to be insufficient as a matter of law to state a claim upon which

53

relief can be granted, the district court did not abuse its discretion when it precluded discovery in this case.

<u>CONCLUSION</u>

For the foregoing reasons, the United States and Health Net Federal Services, LLC, respectfully submit that the judgment of the district court should be affirmed.

Respectfully submitted, this 3rd day of October, 2014.


By: /s/ Christopher Flynn
Christopher Flynn
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone: (202) 624-2864

James R. Holland
SMITH MOORE LEATHERWOOD LLP
300 North 3rd Street
Suite 301
Wilmington, NC 28401
Telephone: (910) 815-7165

Elizabeth Brooks Scherer
SMITH MOORE LEATHERWOOD LLP
434 Fayetteville Street
Suite 2800
Raleigh, NC 27601
T: (919) 755-8700

THOMAS G. WALKER
United States Attorney

BY: /s/ Matthew L. Fesak
MATTHEW L. FESAK
Assistant United States Attorney
310 New Bern Avenue
Suite 800
Raleigh, North Carolina 27601
Telephone: (919) 856-4530
Attorney for the United States

<u>CERTIFICATE OF COMPLIANCE</u>

TO BE INCLUDED IMMEDIATELY BEFORE THE CERTIFICATE OF SERVICE FOR ALL BRIEFS FILED IN THIS COURT

1.   This brief has been prepared using (SELECT AND COMPLETE ONLY ONE):

_____    Fourteen point, proportionally spaced, serif typeface (such as CG Times or Times New Roman, NOT Sans Serif typeface such as Arial). Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, CG Times, 14 point):

_____

  X      Twelve point, monospaced typeface (such as Courier or Courier New). Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, Courier New, 12 point):

  Microsoft Word 2010, Courier New, 12 point

2.   EXCLUSIVE of the corporate disclosure statement, table of contents, table of citations, state with respect to oral argument, any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains (SELECT AND COMPLETE ONLY ONE):

_____ _____    Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief); OR

  X   11382    Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); OR

_____ _____    Lines of Monospaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

                          /s/ Matthew L. Fesak_____
                          MATTHEW L. FESAK
                          Signature of Filing Party

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 3, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

Jeffrey Stephen Miller
Direct: 910-455-8000
Email: jsmlaw@bizec.rr.com
636 Court Street
P. O. Box 909
Jacksonville, NC 28541-0909

/s/ Matthew L. Fesak
Matthew L. Fesak
Assistant United States Attorney